THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BILLY MYATT *et al.*, Defendants-Appellants.

First District (4th Division)   No. 78-171

Opinion filed November 16, 1978.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Ellen G. Robinson, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Defendants, Billy Myatt and Lovell Jones, were convicted of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2) after a bench trial. Myatt was sentenced to a term of 4 years to 4 years and 1 day, and Jones was sentenced to a term of 4 to 6 years. The issues presented for review are (1) whether defendants were proved guilty beyond a reasonable doubt, (2) whether there was sufficient evidence to establish the use of a dangerous weapon during the commission of a robbery, and (3) whether a comment by a prosecutor that defendants had failed to produce a certain witness constituted reversible error.

At trial the complainant, Pamela Crawford, testified that on December 13, 1976, at about 4 p.m., she went to a currency exchange at 4400 West Harrison in Chicago. Upon leaving, she walked past a restaurant where she noticed two men looking at her. She then walked to a tavern on the corner and looked in the window to see what time it was. As she stepped away from the window, she saw the same two men from the restaurant, about 25 feet away, running toward her. As they ran up, Jones said, "This is a stickup." She tried to scream but he put his hand over her mouth and put his left hand into his pocket. It was still light outside, and she saw the reflection of some sunlight on the butt of a gun in the pocket. He pushed it into her ribs and she felt the "cylinder" of a gun. Myatt demanded her purse and then "snatched" it off her arm. She testified she had $48 and miscellaneous items in her purse. Both assailants then ran away.

She went into the tavern and told the people she had been robbed. Two men ran out the door and tried to find the assailants, but they came back after 5 or 10 minutes and told her to call the police.

When the police arrived, she told them a man with a gun, whom she later identified as Jones, was 5 feet 5 inches to 5 feet 8 inches in height, weighed from 165 to 175 pounds, and was between 18 and 23 years old. She described Myatt as being 6 feet to 6 feet 3 inches in height, and slender with a scar on his nose. When describing her assailants to the police, no mention was made of facial hair. It was stipulated that Jones' height is 5 feet 10 inches, and Myatt's height is 5 feet 9 inches. It was also stipulated that Jones was 22 years old, and Myatt was 18 years old.

On December 15, 1976, complainant looked at approximately 100 photographs but could not identify anyone. On January 2, 1977, she looked at another group of "mug shots" and picked out pictures of both defendants. At a lineup on January 18, 1977, she identified Billy Myatt from a group of five people, and on January 27, 1977, she picked out Lovell Jones from a lineup consisting of five people. When asked if there was anything different when she viewed the second lineup than when she viewed the photographs, she said that defendant Jones had facial hair at the lineup.

Joe Gray testified for the defense that he arrived at Ruby's Tavern at 4458 West Harrison, between 3:30 and 4 p.m. on December 13, 1976. At about 4 p.m. a lady came in crying and screaming that somebody had stolen her purse. Gray testified that he and another man rushed out to see if they could find the assailants. Each ran a block in a different direction but neither saw anyone. When he returned to the tavern about 10 minutes later, he noticed the victim was using the telephone. He also noticed that Lovell Jones was in the tavern, seated with his back to the bar facing the pool table. Gray stated that although there were not very many people in the tavern, he had not noticed Jones there before the incident.

Gray further testified that he had worked at the tavern for about 7 years as a bartender and saw Jones about every day during that period. Although he did not know Billy Myatt by name, he had seen him; he did not recall whether he had seen the defendants together. He found out that Jones had been charged with the armed robbery 2 or 3 weeks after the incident from the bartender who had talked to Jones on the telephone.

Tammy Myatt, Billy Myatt's 16-year-old sister, testified that on December 13, 1976, she remembered coming home from school at 1:30 p.m. and finding Billy there. At 3:30 p.m., another brother came home, and he and Billy painted the kitchen until 6 p.m. She stated she did not know Lovell Jones. Although she appeared certain of what happened on

December 13, 1976, she testified inconsistently about when she discovered her brother had been charged with armed robbery.

■■ Defendants first contend they were not proved guilty beyond a reasonable doubt because the identification testimony of the complainant, the sole witness, was vague and was outweighed by the alibi testimony of the two defense witnesses. Defendants argue that the complainant had an insufficient opportunity to view the robbers because they had approached her from behind; however, the record shows that the complainant first saw them in a restaurant as they watched her and then saw them as they ran toward her after she left the tavern window. Although she was grabbed from behind, she testified that when her purse was taken from her, the man holding her was to her right. It thus appears that she had ample opportunity to observe her assailants. See *People v. Yarbrough* (1977), 67 Ill. 2d 222, 226, 367 N.E.2d 666, 668.

■■ Defendants argue that her description of the robbers which she gave to the police was substantially in error. She had told the police that Jones was 5 feet 5 inches to 5 feet 8·inches in height, and that Myatt was 6 feet to 6 feet 3 inches in height. However, it was stipulated that their heights are 5 feet 10 inches and 5 feet 9 inches, respectively. Nevertheless, in finding defendants guilty, the court stated that it had taken note of the discrepancy in the heights as given to the police and the actual fact, but stated that height could be affected by the type of shoes worn by the assailants. Although the complainant did not tell the police anything concerning defendants having facial hair, and there was testimony that each defendant had a mustache and goatee, that fact goes to the weight to be given to the identification by the trier of fact. *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 617, 378 N.E.2d 1318, 1325.

■■ Defendants also argue that the alibi testimony given by Joe Gray that Jones was in the bar after the robbery, and the testimony by Billy Myatt's sister that he was in the house at the time of the robbery, was sufficient to overcome the identification testimony of the complainant which they characterized as vague. However, in finding defendants guilty, the judge stated that the determination rested largely on the credibility of the witnesses, and he was impressed by the testimony of the complainant. The trial court was not obligated to believe the alibi testimony. (*People v. Jackson* (1973), 54 Ill. 2d 143, 149, 295 N.E.2d 462, 464.) Although defendants characterize Joe Gray as a disinterested witness, he testified he had tended bar at the tavern for 7 years and during that time saw defendant Jones there almost every day. This inference could thus be drawn that defendant Jones knew Gray very well. Defendants were properly shown to be the assailants.

■■ Defendants next contend there was insufficient evidence to establish

the use of a dangerous weapon because the complainant could see only a metallic object which she believed to be the butt of a gun. However, the use of a dangerous weapon can be inferred from circumstantial evidence. (*People v. Moore* (1973), 14 Ill. App. 3d 361, 363, 302 N.E.2d 425, 427; *People v. Rice* (1969), 109 Ill. App. 2d 391, 396, 248 N.E.2d 745, 747.) Furthermore, in *People v. Elam* (1972), 50 Ill. 2d 214, 220, 278 N.E.2d 76, 79, the court found that the use o a weapon was proved where the victim believed a statement by the assailant that a small gun was pointed at his back; it was not necessary that the victim see the weapon. In this case, the victim saw part of what she believed to be a gun and felt it as it was shoved into her ribs. Under these circumstances, we find the existence of the weapon was sufficiently proved.

Defendants next contend that the court erred by permitting the prosecutor to shift the burden of proof to them by commenting on the failure of the defense to produce a witness. The prosecutor made the following comment:

"The testimony is that [Joe Gray] found out approximately two weeks later that Mr. Jones was being charged with a robbery committed on December 13th, he finds out from a man by the name of Sandy, whose [*sic*] a bartender there, this man evidently had seen Lovell Jones in the bar that day and yet the defense did not bother to bring this individual to confirm what Mr. Gray had testified to."

■■■ Although the prosecutor's comments could arguably be justified under *People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170, we need not reach the issue because there was no mention of it in defendants' post-trial motion, and the issue is therefore waived. (*People v. Precup*, 73 Ill. 2d 7, 382 N.E.2d 227 (1978); *People v. Edwards*, 74 Ill. 2d 1, ___ N.E.2d ___ (1978).) Furthermore, in a bench trial, where a prosecutor's remarks are in error, the judge is presumed to have disregarded them (*People v. Bennett* (1975), 32 Ill. App. 3d 365, 367, 336 N.E.2d 537, 539); there will not be a reversal unless it affirmatively appears that the court was misled or improperly influenced by such remarks. (*People v. Grodkiewicz* (1959), 16 Ill. 2d 192, 200, 157 N.E.2d 16, 21.) Here, the court based its judgment of guilt on the credibility of the witnesses. The trial court stated it was very impressed with the testimony of the complainant and did not mention the failure of the defendants to bring in the bartender.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and LINN, JJ., concur.