IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100835-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (October 12, 2012) |
| Willie Lee Phillips, | ) | |
| | ) | 2012 UT App 286 |
| Defendant and Appellant. | ) | |

-----

Third District, Tooele Department, 081300568
The Honorable Stephen L. Henriod

Attorneys:     John Pace, Salt Lake City, for Appellant
               Mark L. Shurtleff and Karen A. Klucznik, Salt Lake City, for Appellee

-----

Before Judges Orme, Thorne, and McHugh.

ORME, Judge:

¶1     Defendant appeals his convictions for aggravated sexual abuse of a child, a first degree felony, *see* Utah Code Ann. § 76-5-404.1 (2008), and attempted rape of a child, a first degree felony, *see id*. § 76-5-402.1.  Defendant was also convicted of inflicting serious physical injury on a child, a second degree felony, *see id.* § 76-5-109 (Supp. 2012),[1] but does not challenge that conviction.  We affirm.

---

[1]Because the provisions in effect at the relevant time do not differ materially from the statutory provisions now in effect, we cite to the current version of the Utah Code as a convenience to the reader.

BACKGROUND

¶2    The charges against Defendant stemmed from events involving two children that occurred in December 2008. We refer to the children as Brother and Sister. At the time of the incident, Brother was twelve years old and Sister was eleven years old. Brother and Sister lived in a mobile home with Defendant, their mother (Mother), and two younger siblings. On the night in question, Mother took the children to a Christmas party. After the party, she took them home and then left. Defendant was not home at that time.

¶3    After hearing "banging on the door" a while later, Brother let Defendant in. Defendant was intoxicated and angry. He asked Brother where Mother was. When Brother told Defendant that she was at her sister's house, Defendant "got mad and pushed [Brother] over the [coffee] table." Defendant repeatedly assaulted Brother, while continuing to obsess over Mother's whereabouts. At some point, Defendant moved Brother to the kitchen, where he slammed Brother's head on the counter. Brother was able to briefly retreat to his own bedroom, but Defendant called him back out and continued the assault. Defendant lifted Brother up multiple times, repeatedly slamming him against the back door. At one point, Defendant picked Brother up by his neck and squeezed until Brother "couldn't breathe" and felt like his eyes "were . . . going to pop out of [his] head." Brother was eventually permitted to return to his bedroom again, where his two youngest siblings crawled into bed with him. Defendant then came into Brother's bedroom; held a lighter up to the children's faces; said to Brother, "I know you know where she is"; pulled Brother up by his hair; and hit him in the face, injuring his left eye.

¶4    During the assault on Brother, Sister tried to call Mother three or four times from a phone in her bedroom. At the preliminary hearing, Sister testified that the calls went through but that Mother did not answer. At trial, Sister testified that the phone was not working. At some point, Defendant told Sister to "go into [his] room and take off [her] clothes." Sister testified that she saw Brother when she passed the kitchen to enter Defendant's bedroom, where she sat on the bed. Brother, however, testified that he did not see Sister. Defendant entered the bedroom and pulled off Sister's clothes "really hard." Sister testified that he threw her shirt into a nearby closet and her underwear and shorts onto the floor near the bed. Defendant hit Sister, and she fell back onto the bed. He turned off the lights and shut the door,[2] then undressed and got into the bed

--------

[2]Sister gave conflicting testimony about whether Defendant turned on the

(continued...)

with Sister. Sister testified at the preliminary hearing that Defendant licked her face and kissed her chest, but at trial she stated that Defendant licked and kissed her chest. Defendant then attempted "to put his no-no square into" Sister's vagina, but Sister covered her "no-no square" with her hands. Sister could feel Defendant's "hard" penis "on the back of [her] hands." Defendant demanded that Sister remove her hands and "smacked" her when she refused.

¶5 At trial, Sister testified that she then used Defendant's bathroom. When she returned from the bathroom, Defendant demanded that she get back in bed. Sister said that she wanted to go back to her own room, to which Defendant replied, "Okay, sure. If you want me to f**k you in your room." Sister replied in the negative, and Defendant responded, "Good . . . I reckon I'd do it in here." Defendant then left the room and returned with a bottle of liquor and a bottle of Sprite. He poured a mouthful of liquor into Sister's mouth. At the preliminary hearing, Sister said she then blacked out until morning. At trial, however, Sister testified that Defendant then "smacked" her, put a pillow over her face, and again attempted to penetrate her. Sister kept her hands over her vagina and screamed under the pillow. Defendant removed the pillow and said, "If you scream again, I'm going to kill you and all of your siblings." Sister was allowed to use the bathroom again, and returned to see Defendant holding a sword that usually hung on the wall. Defendant laughed at Sister's pleas to be left alone; handed her the sword; and said, "Kill me." When Sister refused, Defendant threw the sword against the wall.

¶6 A while later, Defendant sat on Sister's side of the bed and "peed on the floor" where he had discarded Sister's clothes. Defendant then said, "Fine, if you [don't] want to do this, then just fine. . . . Go to bed." Sister testified that she did not try to leave Defendant's room because she "was scared" and "didn't know what to do."

¶7 Brother did not hear Defendant yell for Sister to go into Defendant's bedroom, nor did he hear her scream. Later that night, however, he heard Defendant say, "I'm a child molester. I'm nothing but a child molester."

¶8 Sister awoke in the morning, naked, next to Defendant. She testified that she left her shorts and underwear because they were wet, and wrapped herself in her shirt to walk to her bedroom. After she dressed, Sister walked around the trailer park, to a

---

[2](...continued)
television at that time.

nearby store, and around the adjacent neighborhood.[3] When she returned home, her siblings were awake. Sister remembered telling Brother about the attempted rape by Defendant, but Brother did not recall such a conversation. Brother and Sister talked to Mother on the phone,[4] who picked them up a short while later and brought them to a nearby parking lot, where a police officer met them. Officers searched the mobile home after the incident, finding it "in disarray." They found a Sprite bottle and liquor bottle on the nightstand next to Defendant's bed. They also found Sister's orange shorts[5] on Defendant's bed and her underwear on the floor next to the bed. Officers also recovered three swords from Defendant's room.

¶9     Brother was taken to the hospital for treatment of his physical injuries. Sister did not have any observable injuries and was not taken in for examination. Brother's treating physician observed recent bruising on his face, upper chest, left ear, left eye, left upper arm, right upper arm, collarbone, and both sides of his neck, as well as indicia of trauma on the whites of his eyes. At trial, photos of Brother's injuries were admitted into evidence and the physician testified that Brother's injuries were consistent with his description of the assault by Defendant.


ISSUES AND STANDARDS OF REVIEW

¶10     Defendant contends that his trial counsel rendered ineffective assistance in four respects: first, when she "conceded" Defendant's guilt to infliction of serious physical injury on a child but did not enter a guilty plea on behalf of Defendant to that charge; second, when she did not file a motion to arrest judgment after the jury returned guilty verdicts on the charges of attempted rape of a child and aggravated sexual abuse of a child;[6] third, when she failed to object to an improper statement made by the State; and

---

[3]Sister either entered the store once (her preliminary hearing testimony) or twice (her trial testimony).

[4]At the preliminary hearing, Sister said that Brother called Mother on the phone, but at trial her testimony was that Mother called.

[5]Sister testified at the preliminary hearing that her shorts were black but at trial said that they were orange.

[6]Counsel had filed a motion for a directed verdict earlier, which was denied.

(continued...)

fourth, when she did not clarify the number of victims after a misstatement by the court. These arguments were not preserved in the proceedings below and are raised for the first time on appeal.

¶11 "[I]n a case such as the one before us, where the ineffective assistance claim is raised for the first time on direct appeal, we must decide whether defendant was deprived of the effective assistance of counsel as a matter of law. Despite the application of a standard normally bereft of deference, appellate review of counsel's performance must be highly deferential; otherwise, the 'distorting effects of hindsight' would produce too great a temptation for courts to second-guess trial counsel's performance on the basis of an inanimate record." *State v. Tennyson*, 850 P.2d 461, 466 (Utah Ct. App. 1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)) (footnote omitted). To establish ineffective assistance of counsel, Defendant must show "(1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *State v. Smith*, 909 P.2d 236, 243 (Utah 1995). For this court to hold that counsel acted in an objectively deficient manner, we "must be persuaded that there was a lack of any conceivable tactical basis for counsel's actions." *State v. Marble*, 2007 UT App 82, ¶ 20, 157 P.3d 371 (citation and internal quotation marks omitted).

¶12 Lastly, Defendant claims that the cumulative effect of counsel's performance at trial undermines confidence in his convictions for the sexual offenses. "A reviewing court will reverse a jury verdict under the cumulative error doctrine only if the cumulative effect of the several errors undermines . . . confidence that a fair trial was had. If, however, we determine that a defendant's claims do not constitute errors . . . , then it follows that the requirements of the cumulative error doctrine are not met." *State v. Killpack*, 2008 UT 49, ¶ 56, 191 P.3d 17 (first omission in original) (footnote citation and internal quotation marks omitted).

---

[6](...continued)
Neither party presented any additional evidence following that ruling.

ANALYSIS

I. Trial Counsel's Failure to Enter a Formal Guilty Plea on the Child Abuse Charge

¶13    After jury selection but prior to opening statements, defense counsel stated that Defendant "has indicated he is going to plead guilty" to one charge. Counsel advised the court that Defendant was "conceding" the child abuse charge involving Brother. The court inquired: "[W]hen I read the charge to the jury as part of the preliminary instructions, I can read that he is pleading guilty to that charge?" Counsel replied, "You can indicate that he—he's conceding (inaudible). I don't know—he hasn't technically pleaded guilty yet." Defense counsel then affirmed that Defendant had "indicated he is going to plead guilty to that charge." The court clarified that "if he doesn't enter his plea . . . before we start the evidence, then I think the State's obligated to present evidence on that point." The State indicated that it "still intended to present evidence on [the child abuse charge], out of an abundance of caution."

¶14    In light of this discussion, it is obvious that defense counsel was aware of the implications of Defendant conceding but not pleading to the charge. We must, therefore, consider whether "there was a lack of any conceivable tactical basis for counsel's actions." *Marble*, 2007 UT App 82, ¶ 20 (citation and internal quotation marks omitted). We agree with the State that Defendant has not overcome "the strong presumptions that counsel's performance fell 'within the wide range of reasonable professional assistance' and that 'under the circumstances, the challenged action "might be considered sound trial strategy."'" *Tennyson*, 850 P.2d at 465 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (quoting *Michel v. State*, 350 U.S. 91, 101 (1955))).

¶15    Defense counsel repeatedly referred to the charge involving Brother throughout her presentation of Defendant's case. In her opening statement, she told the jurors that Defendant "concedes and admits that he beat [Brother]" but implored them to remember that "physical abuse and sexual abuse are completely different. And while he beat [Brother], he did not touch [Sister]. He did not sexually assault [Sister]. He did not attempt to rape her." At the end of her opening statement, she told the jury that "despite how angry you're going to be at the physical injuries that [Defendant] inflicted upon [Brother], you have to set that passion and that bias aside and evaluate the testimony and determine if that testimony, in regards to sex abuse[,] is credible."

¶16    Throughout the trial, defense counsel used Brother's testimony to point out the inconsistencies in Sister's testimony. For example, defense counsel noted that Brother did not hear Defendant order Sister into his bedroom, did not hear any commotion from

Defendant's bedroom, and did not recall having a conversation with Sister in which she told Brother that Defendant had attempted to rape her. Defense counsel also emphasized the improbability that, given the extensive injuries inflicted on Brother by Defendant, Sister was able to so easily thwart a sexual attack by Defendant without suffering any visible injuries. Counsel reminded the jury that "[w]e saw what a slap did to her brother from [Defendant]. We saw the physical evidence from a slap and from a beating from [Defendant]. Nothing. Not a mark, nothing on her. Reasonable doubt as to whether her story is true."

¶17    We agree with the State that defense counsel may well have strategically allowed the State to present evidence related to the child abuse charge. "[D]efense tactics, whereby counsel admits guilt on a lesser charge in the hope that the jury would then be more receptive to the claim that the defendant was innocent of the far more serious offense and acquit him thereof, is a perfectly acceptable strategy which should not be second guess[ed] by the courts." *People v. Allen*, 727 N.Y.S.2d 331, 331–32 (App. Div. 2001) (second alteration in original) (citation and internal quotation marks omitted).

¶18    In the case at hand, it is quite possible that defense counsel reasonably believed that allowing extensive evidence to be admitted in support of the unchallenged child abuse charge would benefit Defendant because of the contrast to the comparative dearth of evidence supporting the charges involving Sister. It also allowed the jurors to view Defendant as having taken responsibility for actions that he acknowledged were wrongful, giving them the opportunity to convict him for his admitted misdeeds, while lending credibility to his resistance to charges that he denied and that were not as strongly supported. Defendant argues on appeal that "the few helpful tidbits from [Brother]'s testimony, i.e., that which defense counsel used to discredit . . . [S]ister's inconsistent testimony, would still have been available and admissible" had Defendant pled guilty before trial, while the guilty plea would have prevented the admission of all the other evidence concerning Defendant's brutality to Brother.

¶19    This view overlooks the important role that the supporting evidence played in discrediting Sister's testimony. The extent of Brother's injuries, their graphic portrayal through photographic evidence, and the testimony of the physician were utilized by Defendant's trial counsel to show the unlikelihood that Sister would have been able to ward off a sexual assault by Defendant—and particularly that she could have done so without sustaining serious injury. It is therefore entirely plausible that "a fully informed attorney could have concluded that admitting the [evidence] was to [Defendant]'s strategic advantage." *Bullock v. Carver*, 297 F.3d 1036, 1053 (10th Cir. 2002).

¶20    In any event, even if counsel's decision were to be viewed as deficient, we are not convinced that Defendant was prejudiced.  It is entirely possible that much of the evidence related to the abuse of Brother would have still been admitted even if Defendant had pled guilty before trial.  Defendant argues that most of the evidence related to Brother would have been excluded under Utah Rules of Evidence 401, 402, 403, and 404(b) as irrelevant or unduly prejudicial.  The State counters that much of the evidence would have been admissible as evidence of conduct "that was the beginning of a string of events all closely related in time that ended with the" charges in question and is therefore admissible as "part of a single criminal episode." *State v. Johnson*, 784 P.2d 1135, 1141 (Utah 1989).  Given the proximity in time of the events and the general arc of Defendant's anger and abusive actions that night, Defendant has not convinced us that most—if not all—of the evidence related to Brother would have been inadmissible in a trial of only the charges related to Sister. *Cf. State v. Burke*, 2011 UT App 168, ¶ 22, 256 P.3d 1102 (considering whether evidence of another crime would be admissible in a separate trial and noting that "[w]hen the offenses here are considered together and in conjunction with the surrounding facts and circumstances of the night, an escalating pattern of behavior becomes apparent"). *See also State v. Bates*, 784 P.2d 1126, 1127 (Utah 1989) (stating that rule 404(b) does not proscribe the introduction of evidence "elicited to describe the state of mind of the victim").  Thus, even if we concluded that defense counsel's performance was objectively deficient, Defendant's claim of ineffective assistance would fail because Defendant has not demonstrated that he was prejudiced by defense counsel's decision to not have Defendant plead guilty before trial to the charges involving Brother. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

## II. Trial Counsel's Failure to File a Motion to Arrest Judgment

¶21    Next, Defendant claims that his trial counsel was ineffective for not filing a motion to arrest judgment on the sexual assault and rape charges under the inherent improbability doctrine enunciated in *State v. Robbins*, 2009 UT 23, 210 P.3d 288.

¶22    In *State v. Ruiz*, 2012 UT App 42, 272 P.3d 185 (mem.), we explained that the *Robbins* standard is quite stringent:

> We will not disturb a jury's verdict on a theory of "inherent improbability" unless there are "(1) . . . material inconsistencies in the testimony and (2) . . . no other

circumstantial or direct evidence of the defendant's guilt." While "the definition of inherently improbable must include circumstances where a witness's testimony is incredibly dubious and, as such, apparently false," "[t]he existence of any additional evidence supporting the verdict prevents the judge from reconsidering the witness's credibility." "We stress . . . that the court may choose to exercise its discretion to disregard inconsistent witness testimony only when the court is convinced that the credibility of the witness is so weak that no reasonable jury could find the defendant guilty beyond a reasonable doubt."

*Id.* ¶ 3 (quoting *Robbins*, 2009 UT 23, ¶¶ 18–19).

Accordingly, when considering a motion to arrest judgment, a trial judge may reevaluate the jury's determination of testimony credibility in cases where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion, and there is a complete lack of circumstantial evidence of guilt.

*Robbins*, 2009 UT 23, ¶ 18 (citation and internal quotation marks omitted).

¶23    We also note that defense counsel had already challenged the sufficiency of the State's evidence and suggested its inherent improbability through an earlier motion for a directed verdict, which had been denied. Thus, defense counsel may well have concluded that a motion to arrest judgment on essentially the same theory would also be unsuccessful. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

¶24    In any event, the inconsistencies in Sister's testimony do not rise to a level that "no reasonable jury could find the defendant guilty beyond a reasonable doubt." *Robbins*, 2009 UT 23, ¶ 18. Contrary to Defendant's assertion, there *was* circumstantial evidence to support Sister's version of events. Shortly after the assault took place, police recovered Sister's shorts and underwear near Defendant's bed, a location consistent with Sister's account. While not tested for urine, they were wet to the touch. Additionally, a bottle of liquor and a bottle of Sprite were recovered from the nightstand by Defendant's bed, a fact also consistent with Sister's testimony. Lastly, the State elicited evidence that Brother heard Defendant say, "I'm a child molester. I'm

nothing but a child molester." Considering these facts, we reject Defendant's claim that there was a complete lack of supporting circumstantial evidence.[7] Accordingly, we reject Defendant's ineffective assistance of counsel claim premised on defense counsel's failure to file a motion to arrest judgment.

### III. Trial Counsel's Failure to Object to the Prosecutor's Inappropriate Comments at Sentencing

¶25    Defendant claims that his counsel is to blame for the trial court's rejection of Adult Probation & Parole's "recommendation for concurrent sentences, choosing instead to run all three consecutively in what the parties acknowledge amounts to a life sentence without possibility of parole." Defendant claims that defense counsel should have objected when the State referenced, as grounds for consecutive sentences, Defendant's exercise of his Fifth and Sixth Amendment rights to plead not guilty and request a jury trial. The prosecutor stated at sentencing:

> That was horrifying conduct. These kids were terrorized. I know he's exercising his constitutional rights to have a trial and to do this. You know what, they had to appear. There are other people that when they've been faced with charges like this, they have owned up to their conduct and they've lessened the impact to the victims. There's been no attempt by the defendant to lessen the impact to his victims whatsoever. At the time of sentencing that is something that normally the State would raise as a reason to do something different.

Despite the arguable inappropriateness of this statement, the trial court is presumed to have disregarded the prosecutor's commentary. *See Illinois v. Myatt*, 384 N.E.2d 85, 88

---

[7]We are similarly unconvinced that Sister's testimony was so contradictory and equivocal as to suggest it was inherently improbable. At the time of the attack, Sister was eleven years old. We have recognized that "'it is not unusual that a child's testimony be somewhat inconsistent, especially in sexual abuse cases.'" *State v. Marks*, 2011 UT App 262, ¶ 78, 262 P.3d 13 (quoting *State v. Virgin*, 2006 UT 29, ¶¶ 37–38, 137 P.3d 787), *cert. denied*, 272 P.3d 168 (Utah 2012). In particular, none of the discrepancies between Sister's preliminary hearing testimony and her trial testimony were so substantial as to render her testimony "incredibly dubious." *See State v. Robbins*, 2009 UT 23, ¶ 18, 210 P.3d 288.

(Ill. Ct. App. 1978) ("[I]n a bench trial, where a prosecutor's remarks are in error, the judge is presumed to have disregarded them; there will not be a reversal unless it affirmatively appears that the court was misled or improperly influenced by such remarks.") (cited in *Pitt v. Taron*, 2009 UT App 113, ¶ 4, 210 P.3d 962 (mem.)).  Here, nothing in the court's ruling suggests that the court imposed consecutive sentences as a result of this statement by the prosecutor.  Therefore, Defendant has not demonstrated that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## IV.  Trial Counsel's Failure to Clarify the Court's Reference at Sentencing to the Number of Victims

¶26    Defendant also claims that trial counsel was ineffective for failing to object to the court's statement that "[b]ecause they were all separate victims and because of the horribly egregious behavior, all three of these [sentences] will run consecutively." However, in context, it can be deduced that the judge did not mistakenly believe that the three criminal charges involved three separate victims.  The sentencing judge had presided over the trial and was aware that Brother and Sister were the direct victims of Defendant, with one charge concerning Brother and two concerning Sister.

¶27    The testimony also revealed that the two younger siblings were present throughout the violent episode and were also affected by Defendant's conduct.  The prosecutor had argued, "This was a night that was a terrifying night for both [Brother and Sister], as well as their siblings who observed some of the conduct."  Thus, it appears likely that the court had the two younger siblings in mind when making the challenged reference about "separate victims." *See* Utah Code Ann. § 76-3-401(2) (2008) (stating that in determining whether sentences should run consecutively, "the court shall consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant").  In any event, Defendant fails to demonstrate that, had trial counsel objected, there is a "reasonable probability . . . that the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Therefore, this challenge also fails.

CONCLUSION

¶28    For the foregoing reasons, we are not persuaded that Defendant's trial counsel provided ineffective assistance.[8]  Defendant's conviction and sentence are affirmed.

_____
Gregory K. Orme, Judge

-----

¶29    WE CONCUR:

_____
William A. Thorne Jr., Judge

_____
Carolyn B. McHugh, Judge

_____

[8]As previously noted, Defendant also claims that cumulative error warrants reversal in this case.

> Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence . . . that a fair trial was had.  If the claims are found on appeal to not constitute error, or the errors are found to be so minor as to result in no harm, the doctrine will not be applied.

*State v. Gonzales*, 2005 UT 72, ¶ 74, 125 P.3d 878 (omission in original) (citations and internal quotation marks omitted).  Because we determine each of Defendant's claims to be without merit, the cumulative error doctrine does not apply.