**2016 UT App 90**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
GREGORY KENT HOWELL,
Appellant.

Memorandum Decision
No. 20120204-CA
Filed April 28, 2016

Third District Court, Salt Lake Department
The Honorable Judith S.H. Atherton
No. 091902210

B. Kent Morgan and Benjamin R. Dyer, Attorneys
for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGE STEPHEN L. ROTH and SENIOR JUDGE PAMELA T.
GREENWOOD concurred.[1]

ORME, Judge:

¶1     Gregory Kent Howell (Defendant) appeals his conviction and sentence on three counts of securities fraud and one count of pattern of unlawful activity, for which the trial court sentenced him to four concurrent prison terms of one to fifteen years. We affirm.

---

1. Senior Judge Pamela T. Greenwood sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

¶2    In 2006, Defendant and his former colleague (Codefendant) sought to buy and complete a large residential development known as the Fruitland Project. They solicited investors by overstating their experience and understating the risk, and Codefendant funneled investor funds to an undisclosed side project called Alpha Bay. After the Fruitland Project failed and investors complained, the State investigated and ultimately charged both Defendant and Codefendant. Codefendant entered into a plea agreement which, among other things, required him to testify against Defendant in exchange for a reduced sentence. After a jury trial in which Codefendant testified against him, Defendant was convicted. Defendant now argues that the trial court erred in convicting him under Utah's Pattern of Unlawful Activity Act, that he received ineffective assistance from his trial counsel, that the State failed to show that he acted willfully and therefore did not prove every element of securities fraud, that the prosecution withheld material evidence, and that his sentence was unconstitutionally disproportionate to that of Codefendant.[2] Each of Defendant's five arguments fails.

---

2. Defendant articulated a sixth argument: a challenge to the definition of "security" as used in this case. But Defendant has not developed that argument. Instead, Defendant addressed the issue in one sentence, without citing any authority, in his statement of the issues. While "adequate briefing . . . is not a 'hard-and-fast default notion,'" *State v. Roberts*, 2015 UT 24, ¶ 18, 345 P.3d 1226 (quoting *State v. Nielsen*, 2014 UT 10, ¶ 40, 326 P.3d 645), rule 24 of the Utah Rules of Appellate Procedure sets out substantive requirements that parties must satisfy or risk having their briefs "disregarded or stricken," Utah R. App. P. 24(k). An opening brief "shall contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on." *Id.* R. 24(a)(9). "[A]ppellants who fail to follow [those] requirements will likely fail to persuade the court of the validity of their

(continued…)

¶3     Defendant's first argument is that his conduct did not fall within Utah's Pattern of Unlawful Activity Act. Defendant claims that criminal conduct spanning only a few weeks or months, with no threat of future criminal conduct, "do[es] not constitute a pattern of unlawful activity." He argues that the relevant events occurred in the span of about one month, which he contends was too short to constitute a "pattern" under the statute. We do not reach the merits of Defendant's claim, however, because he has not complied with our preservation requirement. *See* Utah R. App. P. 24(a)(5) (requiring all opening briefs to include a "citation to the record showing that the issue was preserved in the trial court . . . or . . . a statement of grounds for seeking review of an issue not preserved in the trial court"). Defendant's opening brief provides no preservation citation for this issue. Only after the State pointed out his lack of preservation did Defendant, in his reply brief, claim that the plain error exception to our preservation rule applies.

¶4     But dealing with preservation in the reply brief is too late. "[W]e have consistently refused to consider arguments of plain error raised for the first time in an appellant's reply brief, even if the plain error argument is in response to a dispute over preservation raised for the first time in the appellee's brief." *Marcroft v. Labor Comm'n*, 2015 UT App 174, ¶ 4, 356 P.3d 164 (citation and internal quotation marks omitted). Because Defendant made no mention of the plain error exception until the reply brief, we will not consider whether this alleged error was plain. *See id.*

---

(…continued)

position." *Roberts*, 2015 UT 24, ¶ 18. Because this potential sixth issue is inadequately briefed, we are wholly unpersuaded and simply assume for purposes of this appeal that the transactions in question involved securities.

¶5    Defendant's second argument is that he received ineffective assistance from his trial counsel. A defendant claiming ineffective assistance of counsel must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See also State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769 ("[F]ailure to prove either element defeats the claim."). "Performance is deficient when it falls below an objective standard of reasonableness. . . . A defendant suffers prejudice when, absent the deficiencies of counsel's performance, there is a reasonable likelihood that the defendant would have received a more favorable result at trial." *Hards*, 2015 UT App 42, ¶ 18. To determine if prejudice occurred, we "must consider the totality of the evidence" and ask if the alleged error "had a pervasive" or "an isolated, trivial effect." *Strickland*, 466 U.S. at 695–96.

¶6    Defendant claims that trial counsel's performance was deficient because counsel did not impeach Codefendant's testimony during cross-examination by asking about the terms of Codefendant's plea agreement, which failure Defendant says was prejudicial given the importance of Codefendant's testimony to the State's case. But even assuming that counsel's performance was objectively deficient, Defendant has not shown that any such deficiency prejudiced the defense. Trial counsel's decision not to impeach Codefendant did not deprive Defendant of a fair trial when Codefendant would have testified that the only plea agreement in effect at that time called for him to plead guilty and testify against Defendant, when that plea and ensuing conviction would put Codefendant at risk of deportation, and that no subsequent, more favorable deal had been finalized as of that time.

¶7    Further, the totality of the evidence would weigh in favor of guilt even if Defendant's trial counsel had successfully impeached Codefendant's testimony by highlighting his plea agreement because of the investors' testimony regarding

Defendant's deceptive statements and Defendant's own admissions. Thus, we conclude that Defendant's trial counsel did not render constitutionally ineffective assistance by failing to question Codefendant about the terms of his plea agreement because Defendant has not demonstrated that any errors in this regard prejudiced him.

¶8      Defendant's third argument is that the State did not prove every element of securities fraud because it did not prove willfulness. When reviewing the sufficiency of evidence following a jury trial, "we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94. And we will reverse "only when the evidence is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt" as to Defendant's guilt. *Id.*

¶9      The requisite mental state for securities fraud is willfulness, *see* Utah Code Ann. § 61-1-21 (LexisNexis 2011),[3] which requires proof that a defendant "desire[d] to engage in the conduct or cause the result," *id.* § 76-2-103 (2012), and "act[ed] deliberately and purposefully, as distinguished from merely accidentally or inadvertently," *State v. Larsen*, 865 P.2d 1355, 1358 n.3 (Utah 1993). "Willful does not require an intent to violate the law or to injure another or acquire any advantage." *Id.*

¶10     Defendant contends that he could not have acted willfully because he did not know at the outset about Codefendant's plan to funnel money away from the Fruitland Project and into Alpha Bay and because he was never a signatory on the accounts or an

---

3. Although various statutes at issue in this case have been amended or renumbered since 2006, the changes are inconsequential in the context of this case. Therefore, for ease of reference, we cite the most recent codification of these statutes.

active participant in the scheme that ultimately defrauded the investors. The fraudulent conduct, however, did not consist only of Codefendant's diversion of the funds but also included Defendant's withholding information regarding the diversion from the investors. Codefendant told Defendant of his plan to divert some funds away from the Fruitland Project and to temporarily use that money to fund Alpha Bay *before* Defendant began soliciting investor funds. Instead of informing potential investors about the Alpha Bay plan, however, Defendant expressed concern to Codefendant about the plan. But Codefendant apparently convinced Defendant that the transfer would be short term and might actually benefit the Fruitland Project. In any event, Defendant failed to notify the investors of Codefendant's expressed plan and his own misgivings about it.[4]

¶11    Furthermore, the investors testified to several instances in which Defendant made fraudulent statements: (1) Defendant falsely represented that he and Codefendant had been involved in "projects," causing investors to believe that Defendant "had been involved in several large-scale commercial projects"; (2) Defendant told one investor that "fifty percent of the lots were already under contract," but failed to disclose that these "contracts" were not legally binding and instead represented only reservations of particular lots; and (3) Defendant told other investors that lots in the development already had deposits on them, totaling $12 million, when in fact there were no such

---

4. Defendant contends that the only evidence of his dishonesty comes from Codefendant's testimony, in violation of Utah law. *See State v. Christean*, 533 P.2d 872, 876 (Utah 1975) (conviction may not rest solely on testimony of accomplice). But as explained above, *see infra* ¶ 11, Codefendant's testimony is not the only evidence that Defendant willfully misled the investors. *See id.* ("Although a conviction may not rest solely upon the testimony of an accomplice, all of the circumstances may be viewed together to determine the facts.").

deposits. Investors also testified that Defendant never clarified that neither Defendant nor Codefendant had previously participated in a large real estate development project. Evidence of each of these statements and omissions was before the jury, and the evidence shows that the jury's conclusion that Defendant acted willfully in misleading the investors is not inconclusive or inherently improbable such that reasonable minds would necessarily have entertained reasonable doubts about Defendant's guilt.

¶12    Defendant's fourth argument is that the State failed to turn over material evidence that would have affected the outcome if Defendant had known about it. He claims that the State failed to timely disclose that Codefendant was a Canadian citizen facing deportation and that the State would eventually agree to a further reduced sentence to help Codefendant avoid deportation.[5] At the time of trial, Codefendant's plea deal had not changed, but Defendant alleges that the fact of Codefendant's Canadian citizenship made it inevitable that the State would offer Codefendant a new, improved deal to limit the risk of his deportation. Thus, Defendant argues that the State's withholding of that evidence necessitates a new trial under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, especially *Giglio v. United States*, 405 U.S. 150 (1972). But Defendant has not shown that he properly preserved this issue, and he has not shown that the plain error doctrine applies and warrants our review of the issue.

¶13    "To preserve an issue, counsel must raise the issue in the trial court 'in such a way that the trial court has an opportunity

---

5. At Defendant's trial, Codefendant testified that there had been no promises other than those made in the first plea agreement. Defendant's argument assumes that the State must surely have known what it would eventually do and that he was entitled to have that knowledge shared with him before trial.

to rule on that issue.'" *State v. Bird*, 2015 UT 7, ¶ 10, 345 P.3d 1141 (quoting *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366). We consider whether the issue was raised in a timely and specific manner along with "supporting evidence or relevant legal authority" in assessing whether the trial court had a legally sufficient opportunity to rule on the issue. *Pratt*, 2007 UT 41, ¶ 15 (citation and internal quotation marks omitted). Defendant argues that he preserved the issue in his rule 60(b) motion for a new trial. As the State notes, however, Defendant failed to timely file for a new trial, and the trial court dismissed the motion on jurisdictional grounds.[6] Therefore, the rule 60(b) motion did not provide the trial court with an opportunity to rule on the merits of the *Brady* issue so as to preserve it for appeal. And while the trial court noted that Defendant had filed a timely appeal, such knowledge would ordinarily reflect, at most, that the trial court knew of Defendant's dissatisfaction with the verdict against him, not that it had the opportunity to rule on any particular issue.[7]

---

6. "If the trial court refuses to address the merits of the newly advanced argument, the issue remains unpreserved for appellate review and may be addressed only if the challenging party can show plain error or exceptional circumstances." *State v. Pinder*, 2005 UT 15, ¶ 46, 114 P.3d 551.

7. This case is in a somewhat unique posture. The parties and the trial court engaged in an extensive discussion of the alleged *Brady* violation during oral argument on Defendant's rule 27 motion to stay the sentence pending appeal. Rule 27 of the Utah Rules of Criminal Procedure requires a defendant who is seeking to avoid incarceration pending appeal to "file a written motion" and memorandum with the trial court that, among other things, "identif[ies] the issues to be presented on appeal and support[s] the defendant's position that those issues raise a substantial question of law or fact reasonably likely to result in a reversal." Utah R. Crim. P. 27(b)(2)(A). The trial court then determines whether to issue a certificate of probable cause. *See id.*

(continued…)

Because the motion was not timely and the trial court was not legally bound to address the merits, including the *Brady* issue, Defendant's *Brady* claim is not preserved.

¶14    Therefore, our review of Defendant's *Brady* claim is limited to the review for plain error alternatively sought by Defendant. *See State v. Gailey*, 2015 UT App 249, ¶ 7, 360 P.3d 805. Plain error applies only when an appellant shows that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). Even assuming Defendant has met the first two elements of plain error—and it is difficult to see how the requirement of obviousness to the trial court would have been met—he cannot prove that the State's failure to provide evidence of Codefendant's Canadian citizenship (and the possible deportation implications) was a harmful error such that it undermines our confidence in the jury verdict. The mere possibility of a more favorable deal for Codefendant would not substantially affect Codefendant's credibility as a witness. Indeed, if counsel had questioned Codefendant on the issue and he had testified truthfully, he would have said that the only deal then agreed upon was Codefendant's initial plea agreement, which ultimately may have bolstered Codefendant's credibility because he was willing to testify against Defendant even though the guilty plea entailed the risk of deportation. Thus, even if this

(…continued)
R. 27(b)(1)(A)–(b)(3)(B). Although the *Brady* issue was addressed in this context, the court only had authority to assess the strength of Defendant's issues for appeal in the process of deciding whether Defendant should remain incarcerated during appeal—not to rule on whether to grant a new trial. (The trial court denied Defendant's Rule 27 motion.)

was an error and even if the error was plain, Defendant has not shown that the State's failure to turn over this information was prejudicial. Because Defendant has not established prejudice, we cannot conclude that the plain error exception to preservation applies.

¶15 Defendant's final argument is that his sentence violates the ban on "cruel and unusual punishment" set forth in Article 1, section 9 of the Utah Constitution.[8] We determine whether a sentence is unconstitutionally cruel and unusual by asking if "the sentence imposed in proportion to the offense committed is such as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances." *State v. Nance*, 438 P.2d 542, 544 (Utah 1968). *Accord Monson v. Carver*, 928 P.2d 1017, 1024 (Utah 1996). Defendant, in contrast, asserts that his sentence was cruel and unusual because it was disproportionate to Codefendant's sentence. And he argues, based on the Utah Supreme Court's plurality opinion in *State v. Gardner*, 947 P.2d 630 (Utah 1997), that the trial court should have considered the proportionality of his sentence to Codefendant's sentence as well as to the severity of the crime itself. But in *Gardner*, a majority of

---

8. Defendant cited only the Utah Constitution in his opening brief, but he referenced the Eighth Amendment to the United States Constitution in his reply brief. Although we focus our analysis on the Utah Constitution because that is how the issue was framed for us in Defendant's opening brief, see *supra* ¶ 4, we note that the outcome would be no different under the U.S. Constitution. *See State v. Houston*, 2015 UT 40, ¶ 145, 353 P.3d 55 (Lee, J., concurring) ("[N]o majority of [the Utah Supreme Court] has ever adopted an independent standard of proportionality under article 1, section 9 of the Utah Constitution. For the most part we have simply conflated the state and federal standards and treated them as indistinguishable. . . . And the sole exception to that rule is *Gardner*, in which a majority of the court refused to embrace any independent state standard.").

the Court compared the defendant's sentence only to the defendant's offense, which is the traditional method of assessing proportionality. *See id.* at 652. Further, the Utah Supreme Court has expressly rejected arguments that proportionality review includes comparing a defendant's sentence to that of a defendant in an already decided case who was convicted of the same crime. *State v. Carter*, 888 P.2d 629, 656 (Utah 1995), *superseded by statute on other grounds as recognized by Archuleta v. Galetka*, 2011 UT 73, ¶ 70, 267 P.3d 232.

¶16    Given the Utah Supreme Court's refusal to compare for proportionality the sentences of defendants in different cases who are guilty of the same crime, we see no obvious reason why a different rule would apply in the case of codefendants. And Defendant has not persuaded us otherwise.[9] It is true that

---

9. Indeed, disparate sentences among codefendants are not uncommon in our jurisprudence, and they have been upheld by other appellate courts. *See, e.g., United States v. Kuhrt*, 788 F.3d 403, 408, 424–25 (5th Cir. 2015) (affirming defendant's disparate sentence even though defendant was merely an employee of his coconspirator who orchestrated a multi-billion-dollar Ponzi scheme when defendant's sentence fell within the federal guidelines and the coconspirator "plead[ed] guilty, accept[ed] responsibility and testif[ied] at multiple trials"); *United States v. McKinney*, 53 F.3d 664, 678 (5th Cir. 1995) (affirming defendant's disparate sentence when defendant's sentence was within the federal sentencing guidelines and his only challenge was based on the lesser sentence of his more-culpable codefendant); *United States v. Rackstraw*, 7 F.3d 1476, 1482 (10th Cir. 1993) (holding "that the sentencing disparity [did] not violate the Eighth Amendment" when coconspirators in the transport of crack cocaine received roughly equal sentences despite one coconspirator transporting 1,040 ounces during a two-year period while the other transported "only sixteen-and-one-half . . . ounces on one occasion").

Defendant faces between one and fifteen years in prison in addition to his obligation to pay restitution to the investors while Codefendant, who testified against him but arguably played a more important role in the scam, is obligated only to serve probation and pay restitution. Although these sentences are disparate, Defendant's only challenge to the legality of his sentence is to point out the disparity of the two sentences and Codefendant's greater culpability. And as explained above, proportionality review does not turn on such a comparison.[10]

¶17    Affirmed.

————————

10. Defendant also argues on appeal that the trial court improperly considered his refusal to admit guilt as a factor in its sentencing decision, an argument he supports by alleging, without record citations, that the State raised his refusal to admit guilt during sentencing. Even assuming that the State made an improper remark about Defendant's refusal to admit guilt in support of its argument for incarceration, "the trial court is presumed to have disregarded the prosecutor's commentary." *State v. Phillips*, 2012 UT App 286, ¶ 25, 288 P.3d 310. Thus, "'there will not be a reversal unless it affirmatively appears that the court was misled or improperly influenced by such remarks.'" *Id.* (quoting *People v. Myatt*, 384 N.E.2d 85, 88 (Ill. App. Ct. 1978)). Defendant has pointed to no affirmative evidence that the trial court considered the State's alleged improper remark. Thus, we will not disturb the sentence the trial court imposed on that ground.