2013 UT App 282

**STATE of Utah, Plaintiff and Appellee,**

v.

**Troy BRAGG, Defendant and Appellant.**

**No. 20120304–CA.**

Court of Appeals of Utah.

Nov. 29, 2013.

Colleen K. Coebergh, for Appellant.

John E. Swallow and Kris C. Leonard, Salt Lake City, for Appellee.

## Opinion

**BILLINGS, Senior Judge:**

¶ 1 Troy Bragg appeals from his convictions on three counts of aggravated sexual abuse of a child, each a first degree felony, *see* Utah Code Ann. § 76–5–404.1 (LexisNexis Supp.2013). For the reasons stated herein, we reject Bragg's arguments on appeal and affirm his convictions.

## BACKGROUND

¶ 2 In April 2009, Bragg was staying at a motel in Salt Lake City when he met C.M. (Mother) and her five boys, including four-year-old B.M. Bragg developed a rapport with the family, and over the next few weeks he and Mother kept in contact. Soon thereafter, Mother and the boys went to visit Bragg at his home in Vernal. Bragg asked them to move in with him, and Mother agreed.

¶ 3 Around the time that Mother and the boys moved into Bragg's house, Bragg disclosed to Mother that he was on the sex offender registry for abusing his own daughter (Daughter) when she was six or seven years old. He claimed that the abuse had only happened once and attributed the offense in large measure to his alcohol use. Mother spoke with Daughter, who was in her twenties by then, about the abuse. Although Daughter confirmed that the abuse had occurred, Mother nevertheless chose to move herself and the boys into Bragg's home.

¶ 4 The two adults initially shared a bedroom, but no romantic relationship developed, and Bragg eventually began sleeping on a couch in the living room. While the relationship between Bragg and Mother failed to flourish, Bragg and B.M. became increasingly close. Bragg began spending his leisure time alone with B.M. and buying him gifts. Bragg would often sleep with B.M., and B.M. began calling Bragg "Dad."

¶ 5 Over the next year, B.M. informed Mother of several disturbing incidents involving Bragg. B.M. told Mother that while he and Bragg were alone on a camping trip, Bragg had put his hand inside B.M.'s underwear and touched his penis. Bragg denied the allegation when Mother confronted him but said he might have accidentally rubbed against B.M. while he was sleeping. B.M. also told Mother that Bragg looked at pornography on his computer that included men performing oral sex on boys. When Mother confronted Bragg about the pornography, Bragg claimed that B.M. had seen "pop-ups" that had unexpectedly appeared on his computer and that he had tried to get rid of.

¶ 6 About a year after Mother and the boys moved in with Bragg, Mother took three of the boys to Salt Lake City for medical appointments. She left one of the remaining boys with Daughter but, at Bragg's request, left B.M. alone with Bragg. The next day, Mother became worried when she could not contact Bragg or B.M. When she finally reached Bragg a few days later, Bragg was evasive about where he and B.M. had been. Mother told Bragg that she was coming to pick up B.M. at Bragg's job site and that she would go to the police if B.M. was not there. When Mother successfully retrieved B.M., he came outside to her car with several new items; Bragg would not come outside.

¶ 7 The next day, B.M. told Mother that Bragg had been "rubbing lotion" on him. Mother later testified that B.M. then told her that Bragg "had told him that when [Bragg] was a young boy, he liked to put lotion on his finger and then gestured sticking it in his bottom." Mother told Daughter about B.M.'s disclosures. By this time, Daughter was also aware of B.M.'s oldest brother's suspicions that Bragg was molesting B.M. The thirteen-year-old brother had told Daughter that he had witnessed Bragg placing his penis against B.M.'s bottom and "humping" him. Daughter contacted the police.

¶ 8 After the police had been notified, Bragg told Mother on one occasion that B.M. would frequently act out sexually after showering and that during B.M.'s last visit, Bragg had rubbed lotion on B.M. to calm him down. On another occasion, Bragg apologized to Mother and stated that he did not mean for things to happen or to go as far as they did. Bragg told Mother that "no amount of prison time would stop him from getting out and doing it again" and that he had undergone therapy and counseling but that it had not helped.

¶ 9 When the police completed their investigation, which included an interview with B.M. and his oldest brother, the State charged Bragg with three counts of aggravated sexual abuse of a child. The three counts were based on allegations that Bragg had showed B.M. how to masturbate by rub-

bing his penis with lotion and putting his finger in his anus; that Bragg had engaged in what B.M. called "pee-pee wars," which involved Bragg and B.M. rubbing their penises together; and that Bragg had "humped" B.M. as witnessed by his oldest brother.

¶ 10 After a hearing conducted on the first day of trial but outside the presence of the jury, the district court ruled that Daughter could testify about her own sexual abuse by Bragg. The district court also ruled that testimony pertaining to Bragg's pornography use and his inadvertent touching of B.M. while the two were camping was admissible because it was alleged in the criminal information against Bragg. The district court also granted the State's pre-trial motion to admit the taped interviews of B.M. and his oldest brother.

¶ 11 After a three-day trial, the jury convicted Bragg on all three counts. The district court sentenced Bragg to prison terms of fifteen years to life for each conviction, with two of the terms to run concurrently with each other and the third term to be served consecutively to the first two. Bragg timely appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 12 First, Bragg argues that he received ineffective assistance of counsel at his trial due to multiple alleged shortcomings by his trial counsel. We evaluate ineffective assistance of counsel claims raised for the first time on direct appeal to determine if relief is warranted as a matter of law. *State v. Phillips*, 2012 UT App 286, ¶ 11, 288 P.3d 310 ("[W]e must decide whether defendant was deprived of the effective assistance of counsel as a matter of law."). Bragg also seeks a remand to the district court for the entry of factual findings he claims are necessary for this court's resolution of his ineffective assistance of counsel claims. *See generally* Utah R.App. P. 23B. To obtain a rule 23B remand, a criminal defendant must present affidavit evidence of nonspeculative facts not fully appearing in the record that demonstrate both deficient performance by counsel and prejudice to the defendant. *State v.*

*Johnston*, 2000 UT App 290, ¶¶ 7–15, 13 P.3d 175 (per curiam).

¶ 13 Second, Bragg argues that he is entitled to a new trial due to prosecutorial misconduct. "We review a trial court's handling of claimed prosecutorial misconduct for an abuse of discretion." *State v. King*, 2010 UT App 396, ¶ 13, 248 P.3d 984.

¶ 14 Third, Bragg argues that the district court committed plain error when it allowed testimony that impermissibly bolstered B.M.'s credibility.[2] "[W]e grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion...." *State v. Gallup*, 2011 UT App 422, ¶ 12, 267 P.3d 289 (citation and internal quotation marks omitted).

¶ 15 Fourth, Bragg argues that the district court committed plain error when it failed to bifurcate his trial. Bragg argues that the aggravating factor of his prior sexual abuse conviction should have been presented to the jury only after it had reached a determination that he had committed one or more of the alleged acts of abuse of B.M. We review the district court's failure to bifurcate a criminal trial for an abuse of discretion. *See State v. Reed*, 2000 UT 68, ¶ 34, 8 P.3d 1025.

¶ 16 Fifth, Bragg argues that the district court committed plain error in admitting evidence of his prior acts under rules 404(b) and 404(c) of the Utah Rules of Evidence. We review the district court's evidentiary rulings for an abuse of discretion. *See Gallup*, 2011 UT App 422, ¶ 12, 267 P.3d 289; *see also State v. Pullman*, 2013 UT App 168, ¶ 7, 306 P.3d 827 ("[W]e review a trial court's decision to admit evidence under rule 404(b) of the Utah Rules of Evidence under an abuse of discretion standard."). Bragg further argues that the district court's instructions to the

jury on rules 404(b) and 404(c) were incorrect and constituted plain error. " 'Claims of erroneous jury instructions present questions of law that we review for correctness.' " *State v. Loeffel*, 2013 UT App 85, ¶ 7, 300 P.3d 336 (quoting *State v. Jeffs*, 2010 UT 49, ¶ 16, 243 P.3d 1250).

¶ 17 Sixth, Bragg argues that his due process rights were violated due to his having inadequate notice of the charged conduct throughout the proceedings, thus entitling him to a new trial. A claim of inadequate notice presents a question of law that we review for correctness. *State v. Wilcox*, 808 P.2d 1028, 1031 (Utah 1991).

¶ 18 Finally, Bragg argues that his convictions should be reversed under the doctrine of cumulative error. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993).

## ANALYSIS

### I. Ineffective Assistance of Counsel

¶ 19 Bragg argues that his trial counsel provided him with ineffective assistance of counsel based on multiple allegations of counsel's deficient performance at trial. These allegations include counsel's failure to respond to the State's pretrial motion to admit prior act evidence under rule 404 of the Utah Rules of Evidence, failure to respond to the State's motion to admit the recorded testimony of B.M. and his older brother pursuant to rule 15.5 of the Utah Rules of Criminal Procedure, and "opening the door" to rebuttal testimony from Bragg's son (Son) by eliciting Bragg's testimony denying his previous abuse of Son[3] To establish ineffective assis-

---

2. Bragg raises several of his issues under the doctrine of plain error because he failed to preserve them below. To obtain relief under the plain error doctrine, Bragg must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993).

3. Bragg's brief makes several other claims of ineffective assistance of counsel based on counsel's general unpreparedness and conduct at trial. The brief additionally contains multiple footnotes requesting that various failures to object and other omissions by counsel be considered in conjunction with his claims of ineffective assistance. We determine that none of these arguments establish the required showing of both deficient performance by counsel and prejudice to Bragg, *see State v. Phillips*, 2012 UT App 286, ¶ 11, 288 P.3d 310.

tance of counsel, Bragg must show "(1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *State v. Phillips,* 2012 UT App 286, ¶ 11, 288 P.3d 310 (citation and internal quotation marks omitted); *see also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

¶ 20 We disagree with Bragg that counsel performed ineffectively by failing to oppose the State's motions to allow prior bad acts evidence and to admit the recorded testimony of B.M. and his older brother. It appears that the State's motions were well taken, and Bragg has not established on appeal that the motions would not have been granted in large part even if his counsel had formally opposed the motions. Rule 404(c) of the Utah Rules of Evidence provides for the admission of "evidence that the defendant committed any other acts of child molestation" to prove propensity in child molestation cases. Utah R. Evid. 404(c)(1). Further, rule 15.5 of the Utah Rules of Criminal Procedure provides a procedure whereby the recorded testimony of children under the age of fourteen may be played to a jury. *See* Utah R.Crim. P. 15.5(a). To the extent that the State's motions sought to admit evidence that was clearly allowed under these rules, counsel's failure to formally oppose the motions cannot be deemed deficient performance by counsel.[4] *See State v. Gunter,* 2013 UT App 140, ¶ 35, 304 P.3d 866 ("There is no requirement that counsel engage in futile acts.").

¶ 21 Furthermore, Bragg has failed to show that he suffered any prejudice from his counsel's failure to oppose the motions. As to the prior bad acts evidence, Bragg does not identify any particular evidence that could have been excluded but was not. Nor does he demonstrate how any improper admission of evidence created a greater likelihood of conviction in light of the other evidence presented at trial, including some clearly admissible prior bad acts evidence. As to the recorded statements, Bragg has not established that he would have been able to exclude B.M.'s recorded statement, as B.M. was only seven years old at the time of trial. Although counsel could likely have excluded the recorded statements of B.M.'s brother, who was fifteen at the time of trial, Bragg has shown no prejudice from the admission of the recording. B.M.'s brother testified at trial, and Bragg has made no showing that the recording contained information that B.M.'s brother did not or could not have repeated at trial.[5] For these reasons, we conclude that Bragg has failed to establish prejudice arising from his trial counsel's failure to oppose the State's evidentiary motions.

¶ 22 Bragg also argues that his trial counsel provided ineffective assistance when he "opened the door" to rebuttal testimony from Son that Bragg had sexually abused him in a manner similar to how Bragg was accused of abusing B.M. The allegations that Bragg had previously abused Son only came to light on the first day of trial, during the hearing on the admission of evidence under rule 404. At the hearing, while Daughter was describing her own childhood abuse by Bragg, she was asked if she had ever witnessed Bragg sexually abusing anyone else. She responded that she had witnessed Bragg abusing her younger brother, Son, when he was about B.M.'s age. Daughter repeated this information during her subsequent testimony before the jury. Prior to Bragg taking the witness stand, the prosecutor warned Bragg's counsel that if Bragg denied abusing Son, the prosecutor would seek to introduce Son's own testimony about the alleged abuse.

¶ 23 Thus, by the time Bragg took the stand, his counsel was faced with two bad

---

4. This is not to say that trial counsel should not have responded to the State's motions—and perhaps handled other matters below in a different manner than he did—as a matter of zealous advocacy or even rudimentary professionalism.

5. Bragg's counsel did object to certain hearsay statements contained in the recording of B.M.'s brother, and the district court gave a curative instruction about the hearsay to the jury. Bragg does not identify the contents of the hearsay on appeal, nor does he make any separate argument relating to the hearsay evidence.

options: fail to question Bragg about his abuse of Son, leaving unchallenged an allegation of abuse very similar to Bragg's charged abuse of B.M.; or have Bragg deny the abuse, knowing that the State would then likely put Son on the witness stand as a rebuttal witness. Even if counsel's necessary election between these two bad options does constitute deficient performance, we are unconvinced that counsel's election prejudiced Bragg in light of the multitude of other evidence against him, which included testimony from both B.M. and his brother describing Bragg's abuse of B.M. as well as Daughter's descriptions of Bragg abusing both her and Son.

¶ 24 In sum, we conclude that Bragg has failed to demonstrate actions or omissions by his trial counsel that were both deficient and prejudicial. *See generally State v. Phillips*, 2012 UT App 286, ¶ 11, 288 P.3d 310. For these reasons, we reject Bragg's ineffective assistance of counsel claims.[6]

## II. Prosecutorial Misconduct

¶ 25 Bragg argues that he is entitled to a new trial due to misconduct by the prosecutor during his cross-examination of Bragg. At one point during the lengthy cross-examination, after Bragg had provided an explanation of one of the alleged instances of abuse, the prosecutor stated, "Would it surprise you that I don't believe a word you just told me?" Bragg's counsel immediately sought to object to the prosecutor's comment, but the district court anticipated and sustained the objection on the grounds that the prosecutor's comment was "argumentative." The prosecutor replied, "I'll withdraw that, your Honor. I'm sorry," and continued the cross-examination without further incident.

¶ 26 On appeal, Bragg argues that the prosecutor's comment constitutes prosecutorial misconduct entitling him to a new trial. To obtain a new trial based on prosecutorial misconduct, Bragg must show that " 'the actions or remarks of . . . counsel call to the attention of the jury a matter it would not be justified in considering in determining its verdict' " and that, under the circumstances of the particular case, " 'the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result.' " *State v. Kohl*, 2000 UT 35, ¶ 22, 999 P.2d 7 (quoting *State v. Longshaw*, 961 P.2d 925, 928 (Utah Ct.App.1998)).[7] We agree with Bragg that the prosecutor's comment expressing his own disbelief of Bragg's testimony was improper. *Cf. State v. Davis*, 2013 UT App 228, ¶ 102, 311 P.3d 538 ("[S]uch comments are improper when the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility." (citation and internal quotation marks omitted)). However, under the circumstances, we see no prejudice to Bragg resulting from the comment.

¶ 27 We agree with the State that the exchange following the prosecutor's com-

---

**6.** We also deny Bragg's motion for a remand pursuant to rule 23B of the Utah Rules of Appellate Procedure. Bragg seeks a rule 23B remand to pursue a list of matters relating to potential ineffective assistance of counsel claims. Specifically, Bragg's remand motion seeks a hearing in the district court to explore the reasons or rationale behind various decisions made by Bragg's trial counsel. However, Bragg has failed to meet the requirements for such a remand that have been established by case law.

"The purpose of Rule 23B is for appellate counsel to put on evidence he or she now has, not to amass evidence that might help prove an ineffectiveness of counsel claim." *State v. Johnston*, 2000 UT App 290, ¶ 7, 13 P.3d 175 (per curiam). To this end, appellate counsel is required to submit affidavit evidence setting forth nonspeculative facts showing the alleged deficient performance of trial counsel. *See id.* ¶¶ 8–

11. Bragg has submitted no such affidavit evidence and is thus not entitled to a remand under rule 23B. *See id.* ¶ 10 ("Given the rule's clear emphasis on specific factual allegations, it would be improper to remand a claim under rule 23B for a fishing expedition." (citation and internal quotation marks omitted)).

**7.** We acknowledge that Utah law appears to be somewhat unsettled on the issue of who bears the burden to establish prejudice or lack thereof arising from instances of prosecutorial misconduct, as well as by what standard the prejudice showing must be made. *See State v. Wright*, 2013 UT App 142, ¶ 41 n. 6, 304 P.3d 887 (discussing split of authority on this issue). However, Bragg argues on appeal that he bears the burden of showing prejudice, and we review his claim accordingly.

ment made it clear to the jury that the remark was inappropriate and should not be considered. The district court did not even wait to hear defense counsel's full objection before sustaining the objection and stating that the remark was argumentative. The prosecutor immediately withdrew the remark and apologized. Additionally, the district court instructed the jury both before and after trial that it was to consider only the evidence admitted in the case and that statements by the attorneys did not constitute evidence. *See generally State v. King,* 2010 UT App 396, ¶ 23, 248 P.3d 984 (identifying "a curative instruction admonishing the jury to dispassionately consider and weigh the evidence and instructing them not to consider the statements of counsel as evidence" as one factor that mitigates against a finding of prejudice (citation and internal quotation marks omitted)). We conclude that the prosecutor's one-time statement of disbelief, which was immediately disapproved by the district court and withdrawn with apology by the prosecutor, did not affect the likelihood of Bragg's conviction.

¶ 28 Further, the effect of the prosecutor's comment must be weighed against the other evidence in the case. *See id.* ("If proof of defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial." (citation and internal quotation marks omitted)). Here, evidence of Bragg's guilt came from multiple sources including B.M.'s recorded interview, testimony from Mother and Daughter, and Bragg's own inculpatory statements. In light of the extensive array of evidence against Bragg, we cannot say that the prosecutor's comment resulted in any greater likelihood of conviction. Because Bragg has not demonstrated prejudice arising from the prosecutor's improper comment, we reject his argument that the comment entitles him to a new trial.

### III. Testimony Bolstering B.M.'s Credibility

¶ 29 Bragg argues that the district court committed plain error when it allowed the detective who had conducted the recorded interview of B.M. to testify that B.M.'s interview statements seemed "genuine" and

that B.M. did not appear to have been coached. In order to obtain a new trial under the doctrine of plain error, Bragg must show that the district court committed error, that the error should have been obvious to the district court, and that the error prejudiced Bragg by creating a reasonable likelihood of a less favorable result. *See State v. Wallace,* 2002 UT App 295, ¶ 16, 55 P.3d 1147.

¶ 30 During the detective's testimony at trial, the following exchange took place between the prosecutor and the detective:

Q  ... During the course of the interview, ... did [B.M.'s responses] ever deviate? I mean, as far as what he did disclose to you? Or did he simply describe it, the same thing happening in a different way?

A  He was—he was consistent. . . .

Q  Okay. And from your training and experience and being in the interview and then watching it, I assume at least a couple times since you've done the interview, does [B.M.] appear to be genuine in his responses or does he appear to be a coached child?

A  Appears to be genuine.

Q  Okay. Have you ever had children who were, what appeared to you to be parroting a story?

A  Yes. I have.

Q  Okay. Are they able to remain consistent in their disclosure to you or is it difficult for them?

A  It's difficult. They forget what they're supposed to say.

We agree with Bragg that the admission of this testimony constituted error that should have been obvious to the district court.

¶ 31 Rule 608(a) of the Utah Rules of Evidence "prohibits any testimony as to a witness's truthfulness on a particular occasion." *State v. Adams,* 2000 UT 42, ¶ 11, 5 P.3d 642; *see also* Utah R. Evid. 608(a). The detective's testimony that B.M. appeared "to be genuine" during his interview was a direct comment on B.M.'s truthfulness and, as such, clearly violated rule 608. *See Adams,* 2000 UT 42, ¶ 14, 5 P.3d 642. Additionally, testimony that a sexual abuse victim's interview statements were consistent and did not appear to be coached has been held to consti-

tute both error and obvious error. *See id.* ¶¶ 19–20. Here, the district court's admission of the detective's testimony that B.M. was consistent and genuine and did not appear to have been coached similarly constitutes obvious error.[8]

¶ 32 However, even obvious error by the district court will not result in the reversal of a criminal conviction unless the error was prejudicial, i.e., unless it created "a sufficiently high likelihood of a different result such that our confidence in the outcome is undermined." *Id.* ¶ 20. Here, as in *State v. Adams*, 2000 UT 42, 5 P.3d 642, there was "ample evidence" of Bragg's guilt above and beyond the improperly bolstered testimony. *See id.* ¶ 21. In addition to B.M.'s interview testimony, the State presented Mother's testimony about events occurring between Bragg and B.M., Daughter's testimony of Bragg's prior sexual abuse of both herself and Son, and evidence of Bragg's own inculpatory statements. In light of this ample evidence, our confidence in the jury's verdict is not undermined by the detective's testimony improperly bolstering B.M.'s credibility.

## IV. Bifurcation

¶ 33 Bragg argues that the district court committed plain error when it failed to sua sponte bifurcate his trial into a guilt phase and an aggravation phase. Under such a scheme, the State would have had to prove Bragg's sexual abuse of B.M. before the jury heard evidence of the aggravating factor—Bragg's prior convictions for sexually abusing Daughter. Bragg relies on *State v. Reed*, 2000 UT 68, ¶ 22, 8 P.3d 1025, as establishing that bifurcation was required.

¶ 34 However, *Reed* expressly recognized that bifurcation is not required when the aggravating conviction is otherwise admissible at trial. *See id.* ¶¶ 25–31 (holding that trial court did not err in failing to bifurcate trial where aggravating offense was admissible under rule 404(b) of the Utah Rules of Evidence). In this case, the district court correctly determined that Bragg's prior convictions, as well as Daughter's testimony about the conduct giving rise to those convictions, were admissible under rule 404(c) of the Utah Rules of Evidence. Thus, under *Reed*, Bragg has not demonstrated any error by the district court in failing to bifurcate his trial.

## V. Rule 404 Issues

¶ 35 Bragg argues that the district court committed plain error in admitting evidence of Bragg's prior bad acts under rules 404(b) and 404(c) of the Utah Rules of Evidence. Bragg also argues that the district court's jury instructions regarding this evidence were insufficient and constituted plain error. We disagree.

¶ 36 As to the admission of prior act evidence, Bragg acknowledges that the district court did not admit any evidence pursuant to rule 404(b). On appeal, Bragg fails to identify any particular evidence that was admitted under rule 404(c) but should not have been.[9] Further, the interpretation and application of rule 404(c) appears to be a matter of first impression in Utah, making a challenge to rule 404(c) evidence particularly unsuited for a plain error analysis. *See State v. Davis*, 2013 UT App 228, ¶ 32, 311 P.3d 538 ("[A]n error is not obvious if there is no settled appellate law to guide the trial court." (citation and internal quotation marks omitted)).

---

8. We recognize the existence of some cases that have allowed testimony about the consistency of another's statements under the reasoning that rule 608 of the Utah Rules of Evidence does not prohibit "testimony from which a jury could *infer* the veracity of the witness." *State v. Adams*, 2000 UT 42, ¶ 14, 5 P.3d 642 (emphasis added); *see, e.g., State v. Bair*, 2012 UT App 106, ¶ 47, 275 P.3d 1050; *State v. Cruz*, 2002 UT App 106U, para. 1, 2002 WL 538038. However, in this case, the combined statements that B.M. appeared to be genuine, consistent, and not coached clearly violated rule 608. *See Adams*, 2000 UT 42, ¶¶ 19–20, 5 P.3d 642.

9. At oral argument, Bragg suggested that rule 404(c) of the Utah Rules of Evidence is limited to evidence of a defendant's prior criminal convictions for child molestation and does not allow for the admission of the facts underlying those convictions. We see no such limitations in the language of rule 404(c), which allows for the admission of "evidence that the defendant committed any other acts of child molestation." Utah R. Evid. 404(c)(1).

For these reasons, we reject Bragg's argument that the court committed plain error in admitting prior bad act evidence.

¶ 37 As to the rule 404 instructions, Bragg's counsel invited any error in the instructions by affirmatively approving them. *See State v. Alfatlawi*, 2006 UT App 511, ¶ 26, 153 P.3d 804 ("A defendant invites error where he affirmatively approve[s] of the jury instructions at trial." (alteration in original) (citation and internal quotation marks omitted)). During the jury instruction colloquy, defense counsel asked if the district court would be "keeping" the proposed rule 404 instructions. The district court stated that it would do so if the parties agreed that keeping the proposed instructions was appropriate, to which defense counsel responded, "I think that's acceptable." This affirmative representation to the district court that the rule 404 instructions were acceptable to defense counsel invited any error in the content of the instructions and precludes plain error review.[10] *See id.*

## VI. Notice of Charged Conduct

¶ 38 Bragg argues that his due process and statutory rights to adequate notice of the charges against him were violated because "the Information was unclear as to what conduct was charged, and what conduct the State purported to use as 'prior bad acts' evidence." *See generally* Utah Const. art. I, § 12 ("In criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation against him...."); *McNair v. Hayward*, 666 P.2d 321, 326 (Utah 1983) ("[D]ue process requires that an accused be given sufficiently precise notification of the date of the alleged crime that he can prepare his defense."). We disagree.

¶ 39 It appears that Bragg's claimed confusion about the exact nature of the charges arose in part from the format of the information, which merely alleged as to each count that Bragg "did commit sexual abuse of a child" without enumerating the specific acts that constituted the charged offense. In addition, each count listed potentially applicable aggravating factors, which included that Bragg "used, showed, or displayed pornography" during the offense.

¶ 40 Despite any lack of clarity in the information, we see no violation of Bragg's notice or other due process rights. Bragg waived his right to a preliminary hearing, foregoing one opportunity to explore the exact nature of the charges against him and resolve any confusion about what those charges entailed. Bragg could also have filed a pretrial motion for a bill of particulars, but elected not to. *See* Utah Code Ann. § 77-14-1 (LexisNexis 2012) ("The prosecuting attorney, on timely written demand of the defendant, shall within 10 days, or such other time as the court may allow, specify in writing as particularly as is known to him the place, date and time of the commission of the offense charged."). Nor is there any other indication in the record that, in the weeks and months leading up to trial, Bragg was concerned about inadequate notice of the charges against him.[11]

¶ 41 Once trial commenced, the prosecutor outlined the State's theory of the case at both the rule 404 hearing and in opening arguments. In each instance, the prosecutor identified the factual basis of the three charged counts: Bragg's using lotion to help B.M. rub his own penis and penetrate himself anally with his finger; Bragg's engagement in "pee-pee wars" with B.M.; and Bragg's "humping" of B.M.[12] To the extent that these factual allegations constituted a surprise to Bragg or his counsel, Bragg could have requested a continuance, but he did not do so.[13]

---

**10.** Bragg does not argue that his trial counsel's approval of the rule 404 instructions constitutes ineffective assistance of counsel.

**11.** We also recognize that the record on appeal does not contain every pretrial communication between a criminal defendant and the State. Thus, Bragg may well have had additional pretrial notice of the State's theory of prosecution through such mechanisms as discovery or plea negotiations.

**12.** Additionally, at closing arguments, the prosecutor conceded to the jury that the State had failed to prove the pornography allegations.

**13.** Counsel's failure to request a continuance is one of the issues that Bragg asks us, in a foot-

*Cf. State v. Perez,* 2002 UT App 211, ¶ 37, 52 P.3d 451 ("When the prosecution introduces unexpected testimony, a defendant essentially waive[s] his right to later claim error if the defendant fails to request a continuance or seek other appropriate relief under Rule 16(g)." (alteration in original) (citation and internal quotation marks omitted)).

¶ 42 In light of the circumstances described above, we cannot say that Bragg has established any violation of his due process rights or other rights to have notice of the nature of the charges against him. Accordingly, we reject his argument that due process or other notice-related violations entitle him to a new trial.

## VII.   Cumulative Error

¶ 43 Bragg's final argument is that he is entitled to a reversal of his convictions under the doctrine of cumulative error. " 'Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence that a fair trial was had.' " *State v. Davis,* 2013 UT App 228, ¶ 106, 311 P.3d 538 (quoting *State v. Dunn,* 850 P.2d 1201, 1229 (Utah 1993)).

¶ 44 As discussed above, Bragg has established only two errors that occurred at his trial: the prosecutor's statement that he did not believe Bragg's testimony and the district court's plain error relating to testimony that bolstered B.M.'s credibility.[14] We have determined that each of these errors, viewed in isolation, was harmless error. For the same reasons, we also conclude that their cumulative effect does not "undermine[ ] our confidence that a fair trial was had" so as to warrant reversal of Bragg's convictions. *See id.*

## CONCLUSION

¶ 45 Although Bragg has raised multiple claims of error occurring below, we have rejected each of his arguments, with two exceptions. We have determined that the prosecutor committed misconduct when he expressed his disbelief of Bragg's testimony and that the district court committed plain error when it allowed the detective to bolster B.M.'s credibility by characterizing his interview performance as consistent, genuine, and not coached. However, in light of the nature of these errors and the otherwise extensive and persuasive evidence against Bragg, we conclude that they are harmless errors, whether viewed individually or in combination. For these reasons, we affirm Bragg's convictions.

Senior Judge JUDITH M. BILLINGS authored this Opinion, in which Judges GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.[1]

---

note, to "consider[ ] in light of the Issue presented related to Ineffective Assistance of Counsel." This does not constitute adequate briefing of an ineffective assistance of counsel claim, and we therefore do not consider whether Bragg's counsel provided ineffective assistance when he failed to request a continuance at trial. *See State v. Merrill,* 2012 UT App 3, ¶ 27, 269 P.3d 196 ("An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." (citation and internal quotation marks omitted)).

14.   We also include in our cumulative error analysis any instances of deficient performance of counsel that Bragg may have identified in his multiple ineffective assistance of counsel claims. *See State v. Dunn,* 850 P.2d 1201, 1229 (Utah 1993) ("In assessing a claim of cumulative error, we consider all the identified errors, as well as any errors we assume may have occurred.").

1.   The Honorable Judith M. Billings, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).