**2025 UT App 56**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JORDAN ROBERT JONES,
Appellant.

Opinion
No. 20220912-CA
Filed April 24, 2025

Fourth District Court, Provo Department
The Honorable Robert C. Lunnen
No. 201401579

Dain Smoland, Attorney for Appellant

Derek E. Brown and Daniel W. Boyer,
Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

LUTHY, Judge:

¶1     Jordan Robert Jones appeals his convictions—primarily on three counts of assault against a peace officer—after he drove his car at high speed past the scene of a roadside DUI investigation involving multiple officers. He asserts that his trial counsel (Counsel) rendered ineffective assistance by not objecting when a sheriff's deputy who was at the scene testified that he "thought" Jones "was trying to run [him] over" and that he and another deputy "felt" that Jones's conduct "was intentional." Jones further asserts that Counsel provided ineffective assistance by not putting on evidence that one of the officers who was allegedly standing in the road when Jones drove past was instead standing on a curb some distance away.

¶2     We conclude that Jones has not established his first ineffective assistance claim but that he has established his second claim with respect to one of the charges of assault against a peace officer. We therefore affirm in part, reverse in part, and remand this case for additional proceedings consistent with this opinion.

BACKGROUND[1]

*The Unrelated Traffic Stop and Jones's Assault Against Officers*

¶3     One evening at about 11:00 p.m. in a residential area of Eagle Mountain, two Utah County Sheriff's deputies in a single patrol truck (Deputy 1 and Deputy 2) pulled over a southbound motorist. The night "was extremely dark." The road was "skinny," and it "curve[d] to the right" for southbound travel. The deputies parked behind the stopped vehicle with the driver side of their patrol truck about three feet further into the road than the driver side of the stopped vehicle to create an "alleyway of safety" to use as they walked between their truck and the stopped vehicle. During the stop, the patrol truck's front and rear emergency lights were on, and their dashcam was recording.

¶4     The stop "turned into a DUI investigation," and Deputy 1 and Deputy 2 called for backup. A third deputy (Deputy 3) arrived and parked his vehicle behind and about three feet further into the road than Deputy 1 and Deputy 2's patrol truck, creating a roughly six-foot "alleyway" between the driver side of Deputy 3's vehicle and the driver side of the stopped vehicle. Deputy 3 left his rear emergency lights on. Then a fourth deputy (Deputy 4) arrived and parked his vehicle facing northbound on the other side of the road and about "50 to 70 yards" to the north of the

---

1. On appeal, "we recite the facts in a light most favorable to the jury's verdict, but present conflicting evidence to the extent necessary to clarify the issues on appeal." *State v. Garcia-Mejia*, 2017 UT App 129, ¶ 2, 402 P.3d 82 (cleaned up).

other deputies' vehicles. As he arrived, Deputy 4 saw the other three deputies "in the road" moving back and forth between their vehicles and the stopped vehicle. Deputy 4 left his front grill emergency lights on.

¶5    The DUI investigation lasted nearly an hour. During that time, more than two dozen vehicles drove past the scene. Generally, those vehicles slowed to a "slow, safe, reasonable speed," "giving plenty of space for all [of the] deputies on scene" and keeping their "trajector[ies] . . . away from [the deputies] and not towards [them]." When those vehicles passed, the beams of their headlights "would cast . . . away from" where the deputies were working.

¶6    At one point, however, Deputy 4 was standing behind Deputy 1 and Deputy 2's patrol truck "watch[ing] the suspect vehicle" when he "noticed a set of headlights" approaching from the north that initially "[swung] far out and away from the traffic stop" and then "turned slightly towards where [the] traffic stop was." Deputy 4 thought this was "odd because the curvature of the road" had "the tendency to . . . push[] [oncoming headlights] to the outside of the [curve], . . . not the inside" where the deputies were working. As the approaching car's "headlights turned towards where [he] was standing," Deputy 4 "heard the RPMs of the engine increase, quite loudly." When Deputy 4 "turned to look at this vehicle, . . . it proceeded at [him] and [his] fellow deputies at a high rate of speed," and he "felt the rush off of the wind" as it passed only "slightly more than 16 inches" from him. Deputy 3 was in his vehicle entering information into his computer when the car passed. He too heard it "speeding up" and getting "quite loud," and when he looked to his left, he also saw it "speeding very fast right through [the] scene."

¶7    The car was a Mercedes GLK-Class SUV with a license plate number beginning with V78. There was one person in the car, and he was wearing a dark hoodie. Deputy 4 left the DUI

investigation scene to pursue the car, and he soon saw a Mercedes GLK-Class SUV with a license plate number beginning with V78 parked in the driveway of a nearby house. He watched the driver, who was wearing a dark hoodie, exit the Mercedes, and in a "very loud, authoritative" voice, he ordered the driver to stop. The driver fled into the open garage of the house. Rather than immediately pursue the driver, Deputy 4 called for backup. Subsequent investigation confirmed that Jones was the registered owner of the Mercedes.

¶8 After backup arrived, Jones's stepfather came out of the house and became "very aggressive with law enforcement, demanding [that they] leave his residence." He was put in handcuffs and placed in the back of a patrol vehicle. Jones then exited the house and was likewise "verbally confrontational with law enforcement." He too was placed in handcuffs and put in a patrol vehicle. Deputies then went to the door of the house and smelled "a clear, present odor of marijuana emitting from the house." They obtained a warrant and searched the house. That search produced keys to the Mercedes, a sweatshirt matching the one worn by its driver, marijuana, and drug paraphernalia. The deputies impounded and conducted an inventory search of the Mercedes. That search yielded additional marijuana, a handgun, and ammunition.

*The Charges and Trial*

¶9 Jones was charged with three counts of assault against a peace officer based on allegations in the probable cause statement that he "veer[ed]" and "accelerate[d]" his car toward the deputies in the road, "missing at least one by mere inches." He was also charged with failure to stop for a peace officer, possession of a firearm by a restricted person, possession of a controlled substance with intent to distribute, and possession of drug paraphernalia. The case proceeded to a jury trial.

¶10 At trial, Deputy 3 and Deputy 4 each testified for the State, recounting the facts recited above. An evidence technician and a forensic toxicologist also testified, and the dashcam video from Deputy 1 and Deputy 2's patrol truck was played for the jury.

¶11 Deputy 4 testified further about where the deputies were standing when the Mercedes passed the DUI investigation scene. He affirmed that he, Deputy 1, and Deputy 2—"all three of [them]"—were "standing out in the roadway a little ways" behind Deputy 1 and Deputy 2's patrol truck when the Mercedes passed "extremely close to all the deputies." He later confirmed that they "were all standing right next to each other on the side of the roadway." The prosecutor then asked Deputy 4 "what was going through [his] mind" when the Mercedes passed, and Deputy 4 testified that he "thought that [the] person [driving the Mercedes] was trying to run [him] over." He further averred that after the Mercedes passed, he and Deputy 1 had "a brief discussion" about whether Deputy 4 "could leave [the DUI investigation] scene . . . to go after that person" while maintaining the other deputies' safety and that during that conversation, they both "felt" that the driver's conduct "was intentional." The prosecutor then asked Deputy 4 to identify the "factors" he saw "that drew [him] to that conclusion." Deputy 4 responded,

> The totality of it, where the vehicle had stopped— or rather, passed my vehicle and swung to the far outside of the roadway. Again, its headlights didn't turn away and cast out into the field, but its headlights pointed directly at us as we were standing there. The increase in the speed, based upon my observation, as well as the audible signal of the RPMs of that engine coming by.

¶12 After the parties rested, the court instructed the jury that the three charges of assault against a peace officer were based on Jones's alleged conduct toward Deputy 1, Deputy 2, and Deputy

4, respectively. The jury found Jones guilty on all three of those charges. It also found him guilty of possession of a firearm by a restricted person, possession of a controlled substance with intent to distribute, and possession of drug paraphernalia. The State had dismissed the charge of failure to stop for a peace officer prior to the conclusion of trial.

*Jones's Appeal and Rule 23B Motion*

¶13     Jones now appeals, asserting as to his convictions of assault against a peace officer that he was deprived of the effective assistance of counsel when Counsel did not object to Deputy 4's testimony that he "thought that [the person driving the Mercedes] was trying to run [him] over" and that Deputy 1 and Deputy 4 "felt" that the driver's conduct "was intentional."

¶14     Jones also filed a motion under rule 23B of the Utah Rules of Appellate Procedure, asking for a remand to the district court to supplement the record in support of three additional ineffective assistance of counsel claims. *See generally* Utah R. App. P. 23B(a) ("A party to an appeal in a criminal case may move the court to remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel."). In an unpublished order, we granted Jones's motion as to one of those additional claims and denied it as to the others.

¶15     In support of the claim for which we granted a remand, Jones had observed that the dashcam video from Deputy 1 and Deputy 2's patrol truck shows that when he drove past the DUI investigation scene, one of the deputies was "standing in the grass by the side of the road, a full car length (and then some) away from the passing [Mercedes]." On remand, the parties "stipulated that [Deputy 2] would testify that he was the [deputy] standing on the curb as Jones [drove] through the scene." The district court therefore supplemented the record with a finding that Deputy 2 "is the deputy seen standing on the curb in the dashcam video as

Jones drives through the scene." Jones now argues that Counsel rendered ineffective assistance as to all of the charges by "fail[ing] to investigate, discover, and present evidence" of that fact at trial.

ISSUES AND STANDARD OF REVIEW

¶16    We address Jones's ineffective assistance claims identified above. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Guerro*, 2021 UT App 136, ¶ 25, 502 P.3d 338 (cleaned up).

ANALYSIS

I. Failure to Object to Deputy 4's Testimony About Jones's Intent

¶17    Jones first asserts that Counsel rendered ineffective assistance by not objecting to Deputy 4's testimony that he "thought that [the person driving the Mercedes] was trying to run [him] over" and that he and Deputy 1 "felt" that the driver's conduct "was intentional." Specifically, he contends that Counsel should have objected under rule 704 of the Utah Rules of Evidence because the testimony constituted an impermissible legal conclusion that "invad[ed] the province of the jury" to make its own finding about Jones's mental state at the time of the crimes. He also contends that Counsel should have objected under rule 602 of the Utah Rules of Evidence because the same testimony "was also impermissible speculation about the interior thoughts of" Jones.

¶18    "To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that (1) 'counsel's performance was deficient' and (2) 'the deficient performance prejudiced the defense.'" *State v. Miller*, 2023 UT App 85, ¶ 25, 535 P.3d 390

(quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)), *cert. denied*, 540 P.3d 78 (Utah 2023). "A defendant's inability to establish either element defeats a claim for ineffective assistance of counsel." *Id.* (cleaned up). To establish deficient performance, the defendant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Forbush*, 2024 UT App 11, ¶ 25, 544 P.3d 1 (cleaned up), *cert. denied*, 550 P.3d 995 (Utah 2024). The focus of this inquiry is reasonableness, and "we judge the reasonableness of counsel's challenged conduct, viewed as of the time of counsel's conduct." *Id.* (cleaned up).

¶19　We now address, in turn, Jones's rule 704 and rule 602 arguments and conclude, as to each, that Counsel did not perform deficiently by not lodging an objection.

## A.　Rule 704

¶20　To establish the charge of assault against a peace officer, the State was required to prove, among other things, that Jones intentionally or knowingly "attempt[ed], with unlawful force or violence, to inflict bodily injury on" a peace officer or that he recklessly, knowingly, or intentionally "commit[ted] an act, with unlawful force or violence, that . . . create[d] a substantial risk of bodily injury to" a peace officer. Utah Code § 76-5-102(2); *see also id.* § 76-2-102 (identifying "intent, knowledge, or recklessness" as the required mental state when an offense does not involve strict liability and "the definition of the offense does not [itself] specify a culpable mental state"); *id.* § 76-4-101(1) (listing the elements of the offense of attempt); *id.* § 76-5-102.4 (defining assault against a peace officer and incorporating the definition of assault from section 76-5-102). Thus, proof that Jones acted intentionally was sufficient to satisfy the mental state element of the crime. Jones contends that Deputy 4's testimony violated rule 704 by providing the jury with a legal conclusion regarding Jones's intent.

¶21 Under rule 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Utah R. Evid. 704(a). "Notwithstanding this rule, opinions that tell the jury what result to reach or give legal conclusions continue to be impermissible." *State v. Zimpfer*, 2024 UT App 136, ¶ 35, 558 P.3d 111 (cleaned up).

> While there is no bright line between responses that embrace an ultimate issue and those that provide an impermissible legal conclusion, testimony is likely to constitute an impermissible legal conclusion if it is framed in a way that is unhelpful to the factfinder; blurs the separate and distinct responsibilities of the judge, jury, and witness; or creates a danger that a juror may turn to the witness's legal conclusion rather than the judge for guidance on the applicable law.

*Id.* (cleaned up). "Witnesses quite clearly provide impermissible legal conclusions when they tie their opinions to the requirements of Utah law." *Id.* ¶ 36 (cleaned up). "On the other hand, when witnesses have used a term in its ordinary meaning rather than its legal meaning, we have determined that their testimony was appropriately admitted." *Id.* ¶ 38 (cleaned up).

¶22 Under these standards, Deputy 4's testimony that he "thought that [the person driving the Mercedes] was trying to run [him] over" was not an impermissible legal conclusion. That testimony did not include the term "intent" or "intentional," and it did not suggest that Deputy 4 was trying to provide guidance on the applicable law. Instead, it was void of legal conclusions, explanations, or terminology, while being helpful to the jury's factual determination of whether Jones acted with the requisite mental state.

¶23 Deputy 4's other statement—that he and Deputy 1 "felt" that the driver's conduct "was intentional"—admittedly did use the term "intentional," which has a legal meaning and constitutes

a possible element of the charged offense. But Deputy 4 did not attempt to provide a legal definition of intent. Nor did he mention the law or suggest that the facts satisfied an element of the crime. Instead, he made this statement while explaining a discussion he and Deputy 1 had about whether Deputy 4 could leave the DUI investigation scene to pursue the driver of the Mercedes without compromising the safety of the remaining deputies. And the prosecutor's follow-up question did not attempt to elicit an explanation of the law but, rather, the factual "factors" Deputy 4 saw "that drew [him] to [the] conclusion" that the driver of the Mercedes acted intentionally. Hence, in context, this statement also did not amount to a legal conclusion. *See id.* ¶ 41 (holding that an officer's testimony was not a legal conclusion where it "made no mention of the law, let alone suggested to the jury that the facts . . . ultimately satisf[ied] the 'without consent' elements at issue").

¶24　Because Deputy 4's testimony did not include a legal conclusion, Counsel did not perform deficiently by not objecting to the testimony under rule 704.

B.　Rule 602

¶25　Jones argues that Counsel should have objected to the same testimony on the ground that it violated rule 602 as well. That rule states (with an exception for expert testimony) that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Utah R. Evid. 602. Jones's rule 602 argument consists of only a citation to a case confirming that rule 602 "require[s] that lay witness testimony be based on firsthand knowledge," *State v. Cegers*, 2019 UT App 54, ¶ 29, 440 P.3d 924, and the otherwise unadorned assertion that Deputy 4's testimony was "impermissible speculation about the interior thoughts of [Jones], rather than direct observation or perception of a lay witness." This argument fails to convince us that competent counsel was required to object to Deputy 4's testimony under rule 602.

¶26 "[L]ay opinion testimony as to the mental state of another" is "neither conclusively nor presumptively inadmissible." *United States v. Guzzino*, 810 F.2d 687, 699 (7th Cir. 1987).[2] Instead, it is admissible under rule 701 of the Utah Rules of Evidence if it is "rationally based on the witness's perception" and "helpful . . . to determining a fact in issue." Utah R. Evid. 701; *see also Guzzino*, 810 F.2d at 699.

¶27 Here, Deputy 4's lay opinion that the driver of the Mercedes "was trying to run [him] over" and that the driver's conduct "was intentional" was expressly grounded in his personal perception of where the car's headlights pointed, the speed at which the car was traveling, and "the audible signal of the RPMs of [its] engine coming by." Accordingly, Counsel could have reasonably concluded that the court would have overruled—under rule 701—any objection Counsel might have made under rule 602 and, thus, reasonably decided not to make a rule 602 objection. *See State v. Ring*, 2018 UT 19, ¶ 43, 424 P.3d 845 (determining that the defendant failed to demonstrate trial counsel's deficient performance because "under the prevailing law at the time of trial, trial counsel could have reasonably believed that an objection was futile").

¶28 Jones's rule 704 and rule 602 arguments both fail to demonstrate Counsel's deficient performance, and his ineffective assistance claim related to Deputy 4's testimony therefore fails.

## II. Failure to Present Evidence That Deputy 2 Was Not in the Road When Jones Drove Past

¶29 Jones next asserts that Counsel rendered ineffective assistance in defending all of the charges by not "investigat[ing],

---

2. When interpreting our own rules of evidence, "[w]e may . . . rely on interpretations of similar federal rules by federal courts to assist our own interpretation." *Robinson v. Taylor*, 2015 UT 69, ¶ 10, 356 P.3d 1230.

discover[ing], and present[ing] evidence" that Deputy 2 was standing on the curb, not in the street, when the Mercedes passed the DUI investigation scene. We conclude that Counsel did perform deficiently in this regard. We also conclude that Counsel's deficient performance prejudiced Jones's defense against the charge of assault against a peace officer specific to Deputy 2. We determine, however, that Counsel's deficient performance did not prejudice Jones's defense with respect to the remaining charges.

A.    Deficient Performance

¶30    Jones was charged with three counts of assault against a peace officer. One count was specific to Deputy 1, one count was specific to Deputy 2, and one count was specific to Deputy 4. All three counts were premised on the theory that Jones recklessly, knowingly, or intentionally accelerated his car toward the deputies in the road. In support of that theory, Deputy 4 testified that he, Deputy 1, and Deputy 2—"all three of [them]"—were "standing out in the roadway a little ways" behind Deputy 1 and Deputy 2's patrol truck when the Mercedes passed "extremely close to all the deputies."

¶31    In potential conflict with that testimony, however, the dashcam video from Deputy 1 and Deputy 2's truck plainly shows a deputy standing on the curb, with the DUI suspect's vehicle between that deputy and the roadway, when the Mercedes passes. And the district court's finding on remand confirms that the deputy shown standing on the curb is Deputy 2. Jones therefore contends that Counsel's failure to "investigate, discover, and present evidence" that Deputy 2 is the deputy shown in the video standing on the curb, not in the road, when the Mercedes passed was deficient performance. We agree.

¶32    "If counsel does not adequately investigate the underlying facts of a case, . . . counsel's performance cannot fall within the wide range of reasonable professional assistance." *State v.*

*Templin*, 805 P.2d 182, 188 (Utah 1990) (cleaned up). "This is because investigation sets the foundation for counsel's strategic decisions about how to build the best defense." *State v. J.A.L.*, 2011 UT 27, ¶ 27, 262 P.3d 1 (cleaned up).

¶33    Here, the State based its case of assault against three peace officers on allegations that Jones accelerated his car toward three deputies in the road. It supported that case with testimony from Deputy 4 that he, Deputy 1, and Deputy 2 were all standing in the road behind Deputy 1 and Deputy 2's patrol truck and that the Mercedes passed "extremely close to all the deputies." Yet the dashcam video, which was introduced by the State and shown to the jury in full by the defense, plainly shows a deputy standing on the curb on the side of the road and separated from the passing Mercedes by the DUI suspect's vehicle. Given the assault against a peace officer charges that were specific to three particular deputies, including Deputy 2, and the State's theory of the case, Counsel's failure to adequately investigate and identify for the jury that Deputy 2 was not standing in the road, as Deputy 4 testified, amounted to deficient performance. While "counsel is not obligated to investigate every possible lead or present every theory of defense," *State v. Griffin*, 2015 UT 18, ¶ 33, 441 P.3d 1166, counsel performs unreasonably by not following up on a strong, obvious possibility that known evidence might, with additional investigation, prove to be substantially exculpatory of a particular charge.

B.    Prejudice as to the Charge of Assault Against Deputy 2

¶34    Counsel's failure to investigate and identify for the jury that Deputy 2 was not standing in the road when Jones passed prejudiced Jones's defense against the charge of assault against a peace officer specific to Deputy 2. To satisfy the prejudice prong of an ineffective assistance of counsel claim, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Here, there is a reasonable probability that had the jury known that Deputy 2 was not in the road but, instead, standing on the curb on the other side of the DUI suspect's vehicle when Jones passed, there is a reasonable probability that it would have acquitted Jones of the charge of assault against a peace officer specific to Deputy 2. Thus, Jones has established his ineffective assistance claim as to that charge.

### C. Prejudice as to the Remaining Charges

¶35 Jones argues additionally that if Counsel had demonstrated to the jury that Deputy 4 "was factually incorrect when he testified repeatedly that [Deputy 2] was right next to him in the roadway when the car passed," that "would have undermined not just the [assault against a peace officer charge specific to Deputy 2], but also every charge [that was dependent on Deputy 4's testimony], because it would have impeached his reliability and credibility as a fact witness." We disagree that Counsel's deficient performance prejudiced Jones's defense with respect to the remaining charges against him.

¶36 To determine if prejudice occurred, we must "assess counterfactual scenarios—that is, what would have happened but for the [deficient performance]." *State v. Garcia-Flores*, 2021 UT App 97, ¶ 27, 497 P.3d 847 (cleaned up). "The counterfactual analysis requires us to consider a hypothetical—an alternative universe in which the trial went off without error." *Id.* (cleaned up). We must also "'consider the totality of the evidence' and ask if the alleged error 'had a pervasive' or 'an isolated, trivial effect.'" *State v. Howell*, 2016 UT App 90, ¶ 5, 374 P.3d 1032 (quoting *Strickland*, 466 U.S. at 695–96).

¶37 We initially consider what would have happened in a counterfactual world with respect to Jones's charges of possession

of a firearm by a restricted person, possession of a controlled substance with intent to distribute, and possession of drug paraphernalia if the jury had learned that Deputy 4's testimony about Deputy 2 standing in the road when Jones passed the DUI investigation scene was demonstrably incorrect. We believe that the hit to Deputy 4's credibility that would have occurred in that world would have been negligible when it came to the gun and drug charges. The weight the jury clearly gave to the later discovery of a gun and marijuana in Jones's car and additional marijuana and paraphernalia in his residence would have been but trivially affected by its knowledge that Deputy 4 was wrong about where Deputy 2 had been standing earlier. We therefore conclude that Jones's defense against those charges was not prejudiced by Counsel's deficient performance.

¶38 Additionally, the dashcam video shows that Deputy 1, Deputy 2, Deputy 3, and Deputy 4 were all at the DUI investigation scene and that only Deputy 2 was on the curb in front of Deputy 1 and Deputy 2's patrol truck when the Mercedes passed. Deputy 4's testimony that only Deputy 3 was sitting in a patrol vehicle when the Mercedes passed and that the others were standing outside was corroborated by Deputy 3. Thus, even if the jury learned that Deputy 4 was wrong with regard to where Deputy 2 was standing when the Mercedes passed, we do not believe that would have changed its assessment of where Deputy 1 and Deputy 4 were standing. Finally, even if Deputy 4's demonstrably incorrect testimony about Deputy 2's location might have caused the jury to question Deputy 4's credibility regarding how close the Mercedes came in inches when it passed the deputies in the road, the other testimonial, video, and audio evidence of Jones's acceleration, speed, trajectory, and proximity to the deputies when he passed is sufficiently robust for us to conclude that there is no reasonable likelihood of a different outcome on the other charges of assault against a peace officer due to Counsel's deficient performance. We therefore affirm those convictions as well.

CONCLUSION

¶39    Counsel did not render ineffective assistance by not objecting to Deputy 4's testimony regarding Jones's intent when he drove past the DUI investigation scene. Counsel did, however, perform deficiently by failing to investigate and present to the jury the fact that Deputy 2 was not standing in the road when Jones drove past. That deficient performance prejudiced Jones's defense with regard to the charge of assault against a peace officer specific to Deputy 2. It did not prejudice Jones's defense against the remaining charges. Accordingly, we reverse Jones's conviction of assault against Deputy 2 and remand this case for additional proceedings on that charge consistent with this opinion. We affirm Jones's convictions on the remaining charges.

———————